## LOUELLA DAVIS *v.* FORMAN SCHOOL ET AL.
### (AC 18068)

O'Connell, C. J., and Hennessy and Healey, Js.

Argued March 1—officially released September 14, 1999

*Lawrence R. Pellett,* for the appellants (defendants).

*George B. Simoncelli, Jr.,* for the appellee (plaintiff).

*Richard Blumenthal,* attorney general, and *William J. McCullough* and *Philip M. Schulz,* assistant attorneys general, filed a brief as amicus curiae.

*Opinion*

HEALEY, J. This appeal arises from the decision of the workers' compensation review board (board) affirming an award to the plaintiff, Louella Davis, pursuant to General Statutes § 31-303,[1] together with a penalty of 20 percent of such award against the defendants, Royal Insurance Company (Royal) and Forman School, of sums due Davis under a stipulation for an award by agreement. On appeal, the defendants claim that the board acted improperly in (1) determining that the penalty provision of § 31-303 was applicable to settlements by stipulation, (2) determining that the penalty sought by Davis was not barred by the express terms of the stipulation and (3) applying the penalty provision of § 31-303 retroactively.[2] We affirm the decision of the board.

The following facts and procedural history are relevant to the resolution of this appeal. Davis filed a notice of claim for workers' compensation benefits, dated June 18, 1991, claiming injuries arising from and in the course of her employment with Forman School. Davis' claim

[1] General Statutes § 31-303 provides: "Payments agreed to under a voluntary agreement shall commence on or before the tenth day from the date of agreement. Payments due under an award shall commence on or before the tenth day from the date of such award. Payments due from the Second Injury Fund shall be payable on or before the tenth business day after receipt of a fully executed agreement. Any employer who fails to pay within the prescribed time limitations of this section shall pay a penalty for each late payment, in the amount of twenty per cent of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter."

Effective July 1, 1993, § 31-303 was amended by Public Acts 1993, No. 93-228, § 14, to include the penalty provision in the last sentence.

[2] The attorney general sought and was granted permission to file an amicus curiae brief in support of the defendants. See Practice Book § 67-7.

before the commissioner was defended against by both Royal and Fireman's Fund Insurance Company (Fireman's Fund). After numerous informal hearings, the parties executed a stipulation dated April 15, 1994.[3] On April 20, 1994, the commissioner approved this stipulation. Royal did not comply with the stipulation in a timely manner, failing to issue its check until May 3, 1994. It did not make payment until May 6, 1994, when the check was delivered to Davis' counsel. At the request of Davis' counsel, the commissioner scheduled a formal hearing to address the issues of payment, late payment and whether a penalty should be assessed. Thereafter, he ordered Royal to pay a 20 percent penalty pursuant to General Statutes (Rev. to 1993) § 31-303, as amended by Public Acts 1993, No. 93-228, § 14.

Both Royal and Forman School appealed to the board, which affirmed the commissioner in a split decision. The board's majority concluded that (1) the penalty imposed was not "barred" by the language of the stipulation, (2) the 1993 amendment did not apply only to injuries sustained after July 1, 1993, the effective date of the amendment, because it was procedural, not substantive, and, therefore, retroactive application was not improper, and (3) the 1993 amendment applied to "stipulations" as that term is included within the meaning of the term "voluntary agreement" in § 31-303. This appeal by the defendants followed.

I

The defendants first claim that the board improperly determined that § 31-303, as amended, applies to workers' compensation cases that are resolved by stipulation.[4] In support of their position, the defendants

---

[3] This stipulation required Royal to pay Davis $25,000 and Fireman's Fund to pay Davis $15,000. Fireman's Fund complied with the stipulation by making timely payment to Davis of $15,000 and is not involved in this appeal.

[4] In their brief, the defendants use the term "stipulations" to include "stipulated settlements." We shall do likewise.

discuss the legislative intent of the statute. They also attempt to distinguish between the terms "stipulation" and "voluntary agreement." We are not persuaded.

" 'In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature.' *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755, 601 A.2d 1005 (1992). '[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987)." *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 340–41, 612 A.2d 1203 (1992). "In order to determine the meaning of a statute, [the court] must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26–27, 717 A.2d 77 (1998); *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 461, 704 A.2d 222 (1997). "We have acknowledged, however, in the context of workers' compensation legislation, that [s]uch guidance is often of little help . . . since words seldom have precise and unvarying meanings. *Jacques* v. *H.O. Penn Machinery Co.*, 166 Conn. 352, 359 n.3, 349 A.2d 847 (1974)." (Internal quotation marks omitted.) *Weinberg* v. *ARA Vending Co.*, supra, 341; see *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 390–91, 618 A.2d 1340 (1993). Our Supreme Court, nevertheless, often has acknowledged that "the Workers' Compensation Act [General Statutes § 31-275 et seq. (act)] is remedial and must be interpreted liberally to achieve its humanitarian purposes. . . . 'Because the [act] is a remedial statute, this court should not impose limitations on the benefits provided for a disabled worker that the statute itself does not clearly specify.' *Misenti* v. *International Silver Co.*, 215 Conn. 206, 210, 575 A.2d

690 (1990)." (Citations omitted.) *Gil* v. *Courthouse One*, 239 Conn. 676, 682–83, 687 A.2d 146 (1997). Moreover, in construing the act, our Supreme Court " 'makes every part operative and harmonious with every other part insofar as is possible . . . .' *Bahre* v. *Hogbloom*, 162 Conn. 549, 554, 295 A.2d 547 (1972)." *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 103–104, 491 A.2d 368 (1985). "In applying these principles we are mindful that the legislature is presumed to have intended a just and rational result." (Internal quotation marks omitted.) *Dos Santos* v. *F. D. Rich Construction Co.*, 233 Conn. 14, 21, 658 A.2d 83 (1995); *Vaillancourt* v. *New Britain Machine/Litton*, supra, 391. We also recognize that "[i]t is the province of the legislative department to define rights and prescribe remedies; of the judicial to construe legislative enactments, determine the rights secured thereby, and apply the remedies prescribed." *Atwood* v. *Buckingham*, 78 Conn. 423, 428, 62 A. 616 (1905); see *Wilson* v. *Security Ins. Group*, 199 Conn. 618, 628, 509 A.2d 467 (1986); *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 341–42, 695 A.2d 1072 (1997).

In addressing the defendants' claim that the penalty provision of § 31-303 is not applicable to stipulations, we begin with their concession that the language of Public Act 93-228, § 14, "is plain and unambiguous and, accordingly, there is no need to look further than its words themselves to construe the legislature's intent." The defendants go on to argue that "[s]imply stated, stipulations for settlement are not included in the language of [Public Act] 93-228, § 14, because it was not intended that they be subject to it." We do not agree with this argument.

It is presumed that the legislature is mindful of judicial construction relevant to legislation it has enacted. *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988); *DeAlmeida* v. *M.C.M. Stamping Corp.*, 29 Conn. App. 441, 451, 615 A.2d 1066 (1992). "It is further

presumed that when the legislature subsequently acts with respect to a statute, it does so with full awareness of relevant judicial interpretations. *Rodriguez* v. *United States*, 480 U.S. 522, 525, 107 S. Ct. 1391, 94 L. Ed. 2d 533 (1987)." *Charles* v. *Charles*, 243 Conn. 255, 263, 701 A.2d 650 (1997), cert. denied, 523 U.S. 1136, 118 S. Ct. 1838, 140 L. Ed. 2d 1089 (1998). Indeed, in the context of a workers' compensation case, our Supreme Court has stated that "[a] stipulation is a compromise and release type of settlement similar to settlements in civil personal injury cases where a claim is settled with a lump sum payment accompanied by a release of the adverse party from further liability. J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) pp. 207–208." (Internal quotation marks omitted.) *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 479–80, 650 A.2d 1240 (1994); *Dunn* v. *United Technologies Corp.*, 239 Conn. 19, 30–31, 682 A.2d 99 (1996). Our Supreme Court has, on a number of occasions, also stated that the term "stipulation" is included within the term "voluntary agreement" in the act.[5] See *Muldoon* v. *Homestead Insulation Co.*, supra, 479–80, citing *Sugrue* v. *Champion*, 128 Conn. 574, 578–79, 24 A.2d 890 (1942); see also *Welch* v. *Arthur A. Fogarty, Inc.*, 157 Conn. 538, 255 A.2d 627 (1969); *Wallace* v. *Lux Clock Co.*, 120 Conn. 280, 284, 180 A. 466 (1935). It is interesting to note that in *Wallace*, the court, in discussing the precursor to General Statutes § 31-296, which governs voluntary agreements in workers' compensation cases, stated that the statute was broad enough not only to include the circumstance when a compensable injury is admitted, "but also where there is a dispute as to the existence of such a claim. An agreement such as the latter is as much within the

---

[5] In like fashion, the board has pointed out that the term "stipulation" is included within the meaning of the term "voluntary agreement." See *Mongillo* v. *Terminal Taxi Co.*, 12 Conn. Workers' Comp. Rev. Op. 197, 199 (1994).

beneficent purpose of the [act] as the former." *Wallace* v. *Lux Clock Co.*, supra, 284.[6]

Recently, in *Muldoon* v. *Homestead Insulation Co.*, supra, 231 Conn. 480, our Supreme Court stated that it has "consistently upheld the ability to compromise a compensation claim as inherent in the power to make a voluntary agreement regarding compensation. *Sugrue* v. *Champion*, [supra, 128 Conn. 578–79]." When the legislature enacted Public Act 93-228, § 14, *Sugrue*, *Wallace* and *Welch* already had been decided. Thus, when § 31-303 was amended by Public Act 93-228 to include the 20 percent penalty language, our courts already had construed the term "voluntary agreement" to include the term "stipulation." Moreover, Public Act 93-228, of which § 14 was one section, was titled "An Act Reforming the Workers' Compensation System" and, as such, the legislature revisited the act as it then was constituted. In so doing, the legislature did not change the language of § 31-303 except to add what is now the last sentence of that section containing the penalty provision.

"In determining whether to overrule precedent, particularly precedent that is a product of statutory interpretation . . . subsequent legislative action or inaction is a key consideration. [T]he legislature is presumed to be aware of the interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation. . . . This presumption is strengthened when the legislature has affirmatively reenacted the statute after the interpretation in question. . . . *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 627, 594 A.2d 464 (1991)." (Internal quotation marks omitted.) *Jolly, Inc.* v. *Zoning Board of Appeals*, 237

---

[6] While the statute at issue in *Wallace* was not literally the same as its successor, § 31-296, the operative language as to what type of settlement arrangements were within its ambit was essentially the same as in § 31-296.

Conn. 184, 200–201, 676 A.2d 831 (1996). This rationale supports our conclusion that the penalty provision of § 31-303 is applicable to settlements by stipulation.[7] Aware of the prior judicial interpretation, the legislature, had it intended to indicate that the term "stipulation" was not to be included within the term "voluntary agreement," could have specifically so provided.

## II

The defendants next claim that the board improperly determined that the penalty sought by Davis was not barred by the express terms of the stipulation. In making this claim, the defendants refer specifically to certain portions of the written stipulation, which, they argue, clearly and unambiguously demonstrate the intent of the parties to settle any and all claims under the act.[8] In further support of their claim, the defendants refer to the order portion of the stipulation that was

---

[7] This conclusion makes it unnecessary for us to evaluate and discuss the defendants' claim regarding the differences between voluntary agreements and stipulations. See *Jolly, Inc.* v. *Zoning Board of Appeals*, supra, 237 Conn. 195, citing *Martin* v. *Plainville*, 40 Conn. App. 179, 182, 669 A.2d 1241 (1996), aff'd, 240 Conn. 105, 689 A.2d 1125 (1997) (Appellate Court, as intermediate court, is prevented from reexamining or reevaluating Supreme Court precedent); *Brunswick* v. *Inland Wetlands Commission*, 25 Conn. App. 543, 553, 596 A.2d 463 (1991), rev'd on other grounds, 222 Conn. 541, 610 A.2d 1260 (1992) (same).

[8] The specific portions of the stipulation referred to by the defendants in making this claim are the following:

"Said lump sum payment is made in full and final settlement of all claims under the Connecticut Workers' Compensation Act . . . . It is agreed by and between the parties hereto that the total sum . . . paid by the [defendants] shall constitute a full, final and complete settlement, accord and satisfaction . . . . It is further agreed that said lump sum payment is to include any and all claims of any nature . . . . It is further agreed by and between the parties that this stipulation was not induced or entered into by fraud, accident, mistake or duress and that none of the parties shall have any further claims under the Workers' Compensation Act of the state of Connecticut . . . . It is understood and agreed that before [Davis] signed this Stipulation For An Award By Agreement that she read the same and that the same was explained to her and she understands that it is a full and final settlement . . . ."

executed by the commissioner, which states in part that "it is ordered, adjudged and concluded that compliance with this agreement shall constitute a full and final settlement, accord and satisfaction of all claims."[9]

The defendants claim that the common-law doctrine of accord and satisfaction is "well-suited" to this case and that it is clear that when the terms of the settlement agreement are interfaced with the law that they have cited on that doctrine, it becomes evident that Davis' request for the penalty is barred by the express terms of the agreement. The defendants also claim that despite the prohibitory language of the settlement agreement, a "claim was made [by Davis] for additional benefits alleged to be due under the terms of the [act]." We do not agree.

"When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law [doctrine of accord and satisfaction] authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim." (Internal quotation marks omitted.) *Blake* v. *Blake*, 211 Conn. 485, 491, 560 A.2d 396 (1989); *County Fire Door Corp.* v. *C. F. Wooding Co.*, 202 Conn. 277, 281–82, 520 A.2d 1028 (1987); *Kelly* v. *Kowalsky*, 186 Conn. 618, 621, 442 A.2d 1355 (1982). "A contract of accord and satisfaction is sufficiently supported by consideration if it settles a monetary claim that is unliquidated in amount." *County Fire Door Corp.* v. *C. F. Wooding Co.*, supra, 282. The settlement agreement between the parties is called an accord and the execution or performance of that agreement is called the satisfaction. 1 E. Farnsworth, Contracts (2d Ed. 1998) § 4.24, pp. 522–23;

[9] The order portion of the stipulation provides in full as follows: "Whereupon it is ordered, adjudged and awarded that compliance with this agreement shall constitute a full, final and complete settlement, accord and satisfaction of all claims of the [plaintiff] against the [defendants] or any of them by virtue of these premises and is hereby ratified."

see J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 21-4, p. 868; Black's Law Dictionary (6th Ed. 1990); 1 Am. Jur. 2d, Accord and Satisfaction § 1 (1994).

Our Supreme Court has held that "[i]f there is a breach of the accord, the obligee has the option of either seeking enforcement of the original duty or seeking enforcement of any obligation under the accord. 2 Restatement (Second), Contracts § 281 (1982) . . . ." (Citations omitted.) *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 809, 626 A.2d 729 (1993); see *Tolland Enterprises* v. *Scan-Code, Inc.*, 239 Conn. 326, 333, 684 A.2d 1150 (1996). " '[S]tatutes existing at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention.' *Ciarleglio* v. *Benedict & Co.*, 127 Conn. 291, 293, 16 A.2d 593 (1940); *Hatcho Corporation* v. *Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985)." *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 199, 567 A.2d 1156 (1989). The United States Supreme Court has held that "[i]t is also settled that the laws which subsist at the time and place of the making of a contract and when it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge and *enforcement*." (Emphasis added.) *Von Hoffman* v. *Quincy*, 71 U.S. (4 Wall.) 535, 550, 71 S. Ct. 403, 18 L. Ed. 403 (1866); *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, supra, 199.

In the present case, the commissioner approved the stipulation on April 20, 1994, and ordered that "compliance" with the agreement "shall constitute a full, final and complete settlement, accord and satisfaction of all

claims of [Davis] against the [defendants]." That order constituted the accord between the parties. The compliance with the accord would constitute the satisfaction, i.e., payment pursuant to the April 20, 1994 stipulation order on or before the tenth day from the date of such order. If the defendants had timely complied with that order, there would have been an accord *and* satisfaction that would have operated to discharge the defendants from their obligation to Davis. Because the amendment to § 31-303 became law on July 1, 1993, prior to the date of the agreement, that statute became a part of the agreement. The amendment containing the penalty was denominated by the legislature as a "penalty" and was clearly intended to be imposed for a delay in payment beyond the time period provided therein.

Black's Law Dictionary defines a "penalty" as "a sum of money [for] which the law exacts payment by way of punishment for . . . not doing some act which is required to be done." Black's Law Dictionary (6th Ed. 1990). The wrong in this case sought to be redressed by the penalty provision is the violation of Davis' legal right to receive timely payment pursuant to § 31-303. The wrong here is not, as the defendants argue, a "claim . . . for additional benefits alleged to be due under the . . . act." Although the term "claim" is not defined in the act, it is evident from the provisions of the act itself that the term "claim" applies to the underlying relief that the act was intended to afford. It is *not* intended to apply to the penalty provision for failure to make timely payment of the agreed sum. In any event, a "claim" is instituted under the act by invoking General Statutes §§ 31-294b[10] and

---

[10] General Statutes § 31-294b provides: "Any employee who has sustained an injury in the course of his employment shall immediately report the injury to his employer, or some person representing his employer. If the employee fails to report the injury immediately, the commissioner may reduce the award of compensation proportionately to any prejudice that he finds the employer has sustained by reason of the failure, provided the burden of proof with respect to such prejudice shall rest upon the employer."

31-294c[11] by notifying the employer and filing a claim.

The triggering of the penalty provision of § 31-303, however, is quite different. It does not involve revisiting the underlying claim but, rather, involves compliance, as the commissioner ordered, with the April 15, 1994

[11] General Statutes § 31-294c is titled "Notice of claim for compensation. Notice contesting liability." It provides in relevant part: "(a) No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within the two-year period or within one year from the date of death, whichever is later. Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. An employee of the state shall send a copy of the notice to the Commissioner of Administrative Services. As used in this section, 'manifestation of a symptom' means manifestation to an employee claiming compensation, or to some other person standing in such relation to him that the knowledge of the person would be imputed to him, in a manner that is or should be recognized by him as symptomatic of the occupational disease for which compensation is claimed.

\* \* \*

"(c) Failure to provide a notice of claim under subsection (a) of this section shall not bar maintenance of the proceedings if there has been a hearing or a written request for a hearing or an assignment for a hearing within a one-year period from the date of the accident or within a three-year period from the first manifestation of a symptom of the occupational disease, as the case may be, or if a voluntary agreement has been submitted within the applicable period, or if within the applicable period an employee has been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care as provided in section 31-294d. No defect or inaccuracy of notice of claim shall bar maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning the personal injury and was prejudiced by the defect or inaccuracy of the notice. Upon satisfactory showing of ignorance and prejudice, the employer shall receive allowance to the extent of the prejudice."

agreement between the parties.[12] Unlike the institution of a claim under the act, a request for a penalty is brought directly to and decided by the commissioner. The penalty provision of § 31-303 can fairly be said to be ancillary to the earlier agreement of the parties. See *Jones* v. *National Bank of Commerce of El Dorado*, 157 F.2d 214, 215 (8th Cir. 1946); *In re Lawson*, 156 B.R. 43, 46 (B.A.P. 9th Cir. 1993) (stating "[a]ctions are said to be ancillary to the original [proceeding] when brought in aid of an execution or to effectuate a judgment entered in the original [proceeding] . . . [and are] dependent upon a judgment or decree in the original [proceeding] which is complete and determines the rights of the parties"). It follows from our determination that Davis' request for a penalty was not a "claim . . . made for additional benefits alleged to be due under the [act]" and that the moneys awarded her by way of the penalty provision are not "benefits" required to be paid pursuant to a "claim" within the purview of the act. We, thus, reject the defendants' claim that the board acted improperly in determining that the penalty sought by Davis was not barred by the express terms of the stipulation.

## III

The defendants' final claim is that the board acted improperly in applying the penalty provision of § 31-303 retroactively. In making this claim, the defendants maintain that Public Act 93-228, § 14, "does not show that the legislature intended to depart from the date of injury rule and, thus, it is to be applied only to cases arising after its effective date of July 1, 1993." We do not agree.

"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in

---

[12] There is no merit to defendants' suggestion that the commissioner and the board acted improperly by "reopening" the stipulation in awarding the penalty.

enacting the statute. See, e.g., *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987). In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The obligations referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of *presumed* legislative intent that statutes affecting *substantive* rights shall apply prospectively only. *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 316, 702 A.2d 1180 (1997). This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. *In re Daniel H.*, 237 Conn. 364, 372, 678 A.2d 462 (1996); accord *Bayusik* v. *Nationwide Mutual Ins. Co.*, 233 Conn. 474, 483–84, 659 A.2d 1188 (1995); *Miano* v. *Thorne*, 218 Conn. 170, 175, 588 A.2d 189 (1991)." (Emphasis in original; internal quotation marks omitted.) *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 718–19, 714 A.2d 1209 (1998).

The rule of presumed legislative intent is not, however, applied to legislation that is general in its terms, affects only matters of procedure and does not impose new obligations or affect the substantive rights of the parties. *Beach* v. *Regional School District Number 13*, 42 Conn. App. 542, 547, 682 A.2d 118, cert. denied, 239 Conn. 939, 684 A.2d 710 (1996); *Schurgast* v. *Schumann*, 156 Conn. 471, 487, 242 A.2d 695 (1968); *Toletti* v. *Bidiziki*, 118 Conn. 531, 536, 173 A. 223 (1934). "While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive

law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." *Romano* v. *B.B. Ginsberg*, 108 R.I. 132, 136, 273 A.2d 315 (1971); *Richardson* v. *Honda Motor Co., Ltd.*, 686 F. Sup. 303, 304 (M.D. Fla. 1988);[13] see Black's Law Dictionary (6th Ed. 1990). Where the amendment is not substantive, i.e., not directed to the right itself, but rather to the remedy, it is generally considered a distinctly procedural matter. *Miller* v. *Kirshner*, 225 Conn. 185, 204, 621 A.2d 1326 (1993). To prevent the exaltation of form over substance, we refer to Public Act 93-228, § 14, as an amendment to the act.[14]

Initially, we must determine whether Public Act 93-228, § 14, effects a change in the substantive rights of the parties. We think not. Prior to July 1, 1993, the effective date of this amendment, payments by an employer to an employee provided for under § 31-303 were required to commence on or before the tenth day from the date of the agreement or award. Those provisions remained the same after Public Act 93-228, § 14, became effective. What did change after July 1, 1993, was that any employer who "fails to pay within

[13] *Richardson* v. *Honda Motor Co., Ltd.*, supra, 686 F. Sup. 304, states that "[a] substantive law creates, defines, and regulates rights as opposed to procedural or remedial law which prescribes a method of enforcing the rights or obtaining redress for their invasion. Black's Law Dictionary, 4th Ed. (1951)."

[14] The defendants suggest that Public Act 93-228, § 14, is not "literally an 'amending' statute" and imply that that fact should make some difference in the analysis of the retroactivity issue. We think not. We recognize that the prefatory language of that section provides, "Section 31-303 of the general statutes is repealed and the following is substituted." In that regard, however, our Supreme Court has stated that "[w]hether a new provision is in the form of a new enactment repealing the old . . . or the form of an amendment of the old is immaterial and depends on the preference of the draftsman. . . . Accordingly, we too have consistently characterized as amendments acts which included the prefatory language of repeal and substitute." (Citation omitted; internal quotation marks omitted.) *State* v. *Kozlowski*, 199 Conn. 667, 676, 509 A.2d 20 (1986).

the prescribed time limitations of [§ 31-303] shall pay a penalty for each late payment, in the amount of twenty percent of such payment." The 1993 amendment to § 31-303 did not create an employee's right to receive the payment due ten days after the agreement involved; that provision already existed in § 31-303. Nor did it create an employer's duty to pay the amount agreed on ten days after the agreement involved; that, too, already was provided for in § 31-303. It did, however, introduce the penalty provision for late payment. That 1993 amendment providing for the penalty was directed not to the right itself, but rather to the remedy. It did not impose a new "obligation" as that term is employed in § 55-3. Rather, the penalty provision in § 31-303 provides Davis with the *procedural mechanism for enforcing her preexisting right* to receive payment within ten days of the commissioner's approval. In so doing, the provision clearly embodies the legislature's intent with respect to the penalty provision, which is that the provision is of a procedural and not a substantive nature.

"Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leaving the preexisting scheme intact." *Moore* v. *McNamara*, 201 Conn. 16, 22, 513 A.2d 660 (1986). "Procedural statutes generally will be applied retroactively absent contrary legislative intent. . . . This rule, however, is not purely mechanical in its application. . . . Absent an express legislative intent, a statute will not be applied retroactively, even if it is procedural, when considerations of good sense and justice dictate that it not be so applied. . . . These aids to legislative interpretation apply with equal force to amendatory acts which effectuate changes in existing statutes." (Citations omitted; internal quotation marks omitted.) *DeAlmeida* v. *M.C.M. Stamping Corp.*, supra, 29 Conn. App. 450–51. Public Act 93-228, § 14, of course, had no

express legislative intent referring to the matter of retroactivity. Moreover, considerations of good sense and justice hardly dictate that this statute not be applied retroactively. Indeed, such considerations counsel in favor of such application. We conclude, therefore, that Public Act 93-228, § 14, is procedural.

We turn now to the defendants' argument that Public Act 93-228, § 14, does not indicate that the legislature intended to depart from the date of injury rule in the application of this amendment, but, rather, that the legislature intended to have it operate only prospectively. We do not agree.

The date of injury rule simply states that "[w]e look to the statute in effect at the date of injury to determine the rights and obligations between the parties. See *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994); *Iacomacci* v. *Trumbull*, [supra, 209 Conn. 222]." (Internal quotation marks omitted.) *Rana* v. *Ritacco*, 236 Conn. 330, 332–33 n.1, 672 A.2d 946 (1996); *Dos Santos* v. *F. D. Rich Construction Co.*, supra, 233 Conn. 15–16 n.1; *Schmidt* v. *O. K. Baking Co.*, 90 Conn. 217, 220–21, 96 A. 963 (1916). We have already noted, however, that, in the absence of any expressed intent to the contrary, procedural statutes ordinarily apply retroactively to all actions, whether pending or not, at the time the statute became effective. See *Coley* v. *Camden Associates, Inc.*, supra, 243 Conn. 318–22.

Here, there is no contrary intent expressed in Public Act 93-228, § 14, which we have found to be procedural in nature. Our Supreme Court has stated that "if a workers' compensation statute is procedural in nature, the date of injury rule and its presumption against retroactivity are inapplicable." *Coley* v. *Camden Associates, Inc.*, supra, 243 Conn. 317. The focus of this procedural amendment is to enforce the employee's preexisting *right* to receive and the employer's preexisting *duty* to

make timely payment. The redress made available by this amendment bears directly on the rational and sensible result that was its purpose. This procedural amendment accomplishes this result without imposing, increasing or decreasing any substantive right or obligation of the employer or employee. Its procedural nature thus renders the date of injury rule inapplicable.

"A statute declares public policy." *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.*, 182 Conn. 437, 442, 438 A.2d 705 (1980). "A statute should be interpreted according to the policy which the legislation seeks to serve. *Aaron* v. *Conservation Commission*, 183 Conn. 532, 538, 441 A.2d 30 (1981); see 2A J. Sutherland, Statutory Construction (4th Ed.) §§ 56.01 through 56.02. *Frito-Lay, Inc.* v. *Planning & Zoning Commission*, 206 Conn. 554, 574, 538 A.2d 1039 (1988)." (Internal quotation marks omitted.) *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 592, 552 A.2d 1207 (1989). It is not seriously in doubt that the matter of prompt payments by employers to employees merited legislative attention. That objective resulted in Public Act 93-228, § 14, amending the act, which is in accord with the remedial character of the act. The defendants suggest that the severity of the penalty here sends an adverse message to the business community. This concern is more properly directed to the legislative branch and not to the judicial branch of government. We are sensitive to our role in the scheme of government. We recognize that "[i]t is up to the legislatures, not courts, to decide on the wisdom and utility of legislation. . . . [C]ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. . . . *Dupont* v. *Planning & Zoning Commission*, 156 Conn. 213, 220, 240 A.2d 899 (1968)." (Citation omitted; internal quotation marks omitted.) *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988).

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.