## ROBERT F. SMITH, JR., ET AL. *v.* GMAC MORTGAGE CORPORATION

Superior Court, Judicial District of Fairfield

File No. CV-03-0399542S

Memorandum filed July 8, 2004

*Gallagher Law Firm,* for the plaintiffs.

*Tyler, Cooper & Alcorn,* for the defendant.

LEVIN, J. General Statutes § 49-8 (c) provides that when a mortgagee fails, after request, to release a mortgage that has been paid, the mortgagee "shall be liable for damages to any person aggrieved . . . up to a maximum of five thousand dollars . . . ." The issue before the court on the parties' cross motions for summary judgment is whether this limit may be multiplied where there is more than one aggrieved person. The court holds that it may not.

The facts are not in dispute. On December 14, 2000, the plaintiffs, Robert F. Smith, Jr., and Jeanette L. Mockalis, obtained a home equity line of credit from the

defendant, GMAC Mortgage Corporation, and executed an open end mortgage securing the line of credit. The mortgage was recorded on the land records. On December 26, 2001, the plaintiffs paid off the loan and provided the defendant with a signed copy of their request to release the mortgage securing the line of credit. The defendant deposited the plaintiffs' check, but did not provide them with a release of the mortgage.

On January 13, 2003, the plaintiffs filed a two count complaint. The first count is based on § 49-8 (c) and seeks $10,000 in damages, $5000 for each of the plaintiffs. The second count alleges a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and is not now before the court.

The defendant has moved for partial summary judgment on the first count of the complaint on the ground that pursuant to § 49-8 (c), "the plaintiffs together are entitled to a total sum of $5000 plus a reasonable attorney's fee to be established by the court plus costs." The defendant has stipulated that it failed "to execute and deliver a release of the mortgage alleged in the complaint after receiving full payment . . . and a request for release." It argues, however, that its liability for statutory damages is limited to $5000. The plaintiffs have also moved for partial summary judgment on the ground that each of them is aggrieved, and, therefore, entitled to the maximum statutory amount of $5000, or a total of $10,000, plus costs and attorney's fees.

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most

favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § [17-46]." (Citations omitted; internal quotation marks omitted.) *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 237, 842 A.2d 1089 (2004). Here, there are no issues of fact; the issue is purely one of statutory construction, a question of law. See *Grondin* v. *Curi*, 262 Conn. 637, 649, 817 A.2d 61 (2003).

Preliminarily, it is helpful to review the statutory antecedents to § 49-8 (c). The origin of § 49-8 (c) dates back to the nineteenth century when mortgagors could file "a petition in chancery to redeem the mortgaged premises." *Gordon* v. *Tobias*, Superior Court, judicial district of New Haven, Docket No. 438895 (June 28, 2001) (*Blue, J.*), aff'd, 262 Conn. 844, 817 A.2d 683 (2003). They could also assert "a common law cause of action [for damages] in the nature of a breach of contract based upon [their] covenant or agreement contained in the mortgage." *Skorpios Properties, Ltd.* v. *Waage*, 172 Conn. 152, 155, 374 A.2d 165 (1976). "In 1869, the legislature created an additional, statutory remedy. Upon payment, a mortgagor could deliver a written request for a release, and, upon the willful neglect or refusal to do so for thirty days, the mortgagee would forfeit the sum of five dollars per week. [Public Acts 1869, chap. 16.]" (Internal quotation marks omitted.) *Gordon* v. *Tobias*, supra, Superior Court, Docket No. 438895.

The provision that the person failing, upon payment and written request, to release a mortgage pay "to any person aggrieved five dollars for each week" of such

failure remained in the statute until 1969. General Statutes (Rev. to 1958) § 49-8. In 1969, the legislature raised the penalty to fifty dollars per week "but not exceeding in the whole the sum of one thousand dollars." Public Acts 1969, No. 595. In 1979, the legislature increased the weekly payment to $100 "but not exceeding in the whole the sum of five thousand dollars . . . ." Public Acts 1979, No. 79-10. The 1979 act also confirmed that a common-law action for damages survived, as the court had held previously in *Skorpios Properties, Ltd.* v. *Waage*, supra, 172 Conn. 156. In 1989, the legislature increased the weekly payment to $200 and removed the cap of $5000 as the maximum statutory amount. Public Acts 1989, No. 89-347, § 18. In 1995, the legislature reimposed the $5000 cap. Public Acts 1995, No. 95-102, § 1 (c).

As amended in 1995, subsection (c) of § 49-8 now provides: "The mortgagee or plaintiff or the plaintiff's attorney, as the case may be, shall execute and deliver a release within sixty days from the date a written request for a release of such encumbrance (1) was sent to such mortgagee, plaintiff or plaintiff's attorney at the person's last-known address by registered or certified mail, postage prepaid, return receipt requested, or (2) was received by such mortgagee, plaintiff or plaintiff's attorney from a private messenger or courier service or through any means of communication, including electronic communication, reasonably calculated to give the person the written request or a copy of it. *The mortgagee or plaintiff shall be liable for damages to any person aggrieved at the rate of two hundred dollars for each week after the expiration of such sixty days up to a maximum of five thousand dollars* or in an amount equal to the loss sustained by such aggrieved person as a result of the failure of the mortgagee or

plaintiff or the plaintiff's attorney to execute and deliver a release, whichever is greater, plus costs and reasonable attorney's fees."[1] (Emphasis added.)

In an effort to access readily what it considers legislative history helpful to its cause, the defendant invokes *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003) (en banc), in which the Supreme Court eschewed the "plain meaning rule" of statutory construction, the rule that courts will not look to sources of legislative intent beyond the text of the statute in question where the meaning of the statute is plain and unambiguous. The

---

[1] At the time of the acts giving rise to the present action, General Statutes § 49-8 provided in its entirety: "(a) The mortgagee or a person authorized by law to release the mortgage shall execute and deliver a release to the extent of the satisfaction tendered before or against receipt of the release: (1) Upon the satisfaction of the mortgage or (2) upon a bona fide offer to satisfy the same in accordance with the terms of the mortgage deed upon the execution of a release, or (3) when the parties in interest have agreed in writing to a partial release of the mortgage where that part of the property securing the partially satisfied mortgage is sufficiently definite and certain, or (4) when the mortgagor has made a bona fide offer in accordance with the terms of the mortgage deed for such partial satisfaction on the execution of such partial release.

"(b) The plaintiff or the plaintiff's attorney shall execute and deliver a release when an attachment has become of no effect pursuant to section 52-322 or section 52-324 or when a lis pendens or other lien has become of no effect pursuant to section 52-326.

"(c) The mortgagee or plaintiff or the plaintiff's attorney, as the case may be, shall execute and deliver a release within sixty days from the date a written request for a release of such encumbrance (1) was sent to such mortgagee, plaintiff or plaintiff's attorney at the person's last-known address by registered or certified mail, postage prepaid, return receipt requested or (2) was received by such mortgagee, plaintiff or plaintiff's attorney from a private messenger or courier service or through any means of communication, including electronic communication, reasonably calculated to give the person the written request or a copy of it. The mortgagee or plaintiff shall be liable for damages to any person aggrieved at the rate of two hundred dollars for each week after the expiration of such sixty days up to a maximum of five thousand dollars or in an amount equal to the loss sustained by such aggrieved person as a result of the failure of the mortgagee or plaintiff or the plaintiff's attorney to execute and deliver a release, whichever is greater, plus costs and reasonable attorney's fees."

rule in *Courchesne*, however,[2] was promptly overturned by the General Assembly in Public Acts 2003, No. 03-154, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extra-textual evidence of the meaning of the statute shall not be considered."

"Since it is competent for the legislature to provide rules for the construction of statutes, a statute governing the construction of statutes will be given effect." 82 C.J.S. 390, Statutes § 308 (1999); see, e.g., General Statutes §§ 1-1 through 1-1g. Therefore, pursuant to Public Act 03-154, the court first determines whether the meaning of § 49-8 (c) is plain and unambiguous. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 134 n.19, 848 A.2d 451 (2004).

The plaintiffs focus on the words "any person" in the phrase "any person aggrieved" in § 49-8 (c) and argue that those words connote that any one of several persons may seek the statutory payment provided by the statute, each one to the maximum of $5000. The defendant, on the other hand, argues that all mortgagors must be treated as one for purposes of the $5000 limit and that as a group they are entitled to payment "up to a maximum of five thousand dollars . . . ." General Statutes § 49-8 (c).

"In interpreting statutes that contain the word 'any,' we have recognized that 'any' can have a variety of

---

[2] *State* v. *Courchesne*, supra, 262 Conn. 537, was decided by the Supreme Court on March 11, 2003. Public Acts 2003, No. 03-154, restoring the plain meaning rule, was approved on June 26, 2003.

meanings. . . . The word 'any' can be used to denote 'all,' 'every,' 'some' or 'one.' " (Citations omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 117, 779 A.2d 737 (2001). Moreover, with respect to the word "person," General Statutes § 1-1 (f) provides: "Words importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular." Therefore, from a literal standpoint, it is conceivable that the legislature intended that a mortgagee be liable to any one person aggrieved up to the maximum of $5000 or to *all persons* aggrieved up to the maximum limit. Thus, a myopic focus on the words "any person aggrieved" yields an equivocal result.

However, the phrase "any person aggrieved" is a common one in the General Statutes, used especially in conferring a right of review or appeal.[3] It is quite clear that in its customary use, the phrase does not connote

---

[3] See General Statutes §§ 1-87, 1-98, 3-70a, 3-71a, 4-195, 4d-39, 7-142, 7-148e, 7-148*l*, 7-149a, 7-250, 7-255, 8-7, 8-8, 8-273, 12-3a, 12-18, 12-30, 12-65f, 12-91, 12-107c, 12-107e, 12-115, 12-170g, 12-170cc, 12-295a, 12-307, 12-311, 12-312, 12-314, 12-330*l*, 12-330m, 12-395, 12-405, 12-447, 12-454, 12-502b, 12-504d, 12-521, 12-522, 13a-40, 13a-49, 13a-62, 13a-73, 13b-413, 14-12g, 14-33, 14-57, 14-66, 14-111q, 14-150, 14-174, 14-227f, 14-311, 14-313, 14-324, 15-7, 15-9, 15-13, 15-74, 15-95, 15-103, 15-125, 16-244h, 16a-13, 17a-11, 17a-520, 17a-525, 17a-550, 17b-77, 17b-496, 19a-12, 19a-85, 19a-123d, 19a-221, 19a-229, 19a-265, 19a-320, 19a-441, 19a-506, 19a-517, 19a-529, 20-7c, 20-73a, 20-74g, 20-99, 20-192, 20-203, 20-222, 20-227, 20-247, 20-273, 20-289, 20-322, 20-324a, 20-324j, 20-329c, 20-329*l*, 20-329u, 20-329aa, 20-336, 20-341h, 20-347, 20-364, 20-377u, 20-431, 20-462, 20-495a, 20-520, 21-72, 21a-139, 22-84, 22-101, 22-111q, 22-129a, 22-167, 22-168, 22-169, 22-170, 22-187, 22-248, 22-288a, 22-320d, 22-326f, 22-342, 22-344, 22-344c, 22-358, 22a-30, 22a-43, 22a-54, 22a-66d, 22a-122, 22a-161, 22a-208p, 22a-339e, 22a-344, 22a-354q, 22a-408, 22a-449f, 22a-449g, 23-61e, 23-65h, 23-65q, 26-192e, 26-209, 27-138c, 29-32b, 29-132, 29-155a, 29-192, 29-200, 29-209, 29-236, 29-252, 29-252a, 29-254, 29-266, 29-269, 29-309, 29-317, 29-323, 29-327, 29-334, 29-340, 29-369, 29-403, 29-405, 31-109, 36a-189, 36b-30, 36b-76, 38a-139, 38a-147, 38a-164, 38a-337, 38a-678, 38a-774, 38a-776, 38a-799, 38a-817, 38a-843, 38a-884, 38a-889, 38a-935, 38a-994, 42-182, 42-233, 45a-186, 45a-401, 46b-48, 47a-52, 47a-57, 49-8, 49-51, 52-146j, 52-570c, 52-570d, 52-570f, 52-571a, 52-571d, 52-571h and 54-47g.

that every person aggrieved must join to exercise the rights conferred. See *Smith* v. *Planning & Zoning Board*, 203 Conn. 317, 524 A.2d 1128 (1987). Indeed, it appears that "[t]he paucity of cases that specifically decide [this question] is more a function of a failure to litigate the obvious than a failure to raise and decide the issue." *Paulus* v. *LaSala*, 56 Conn. App. 139, 150, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). This suggests that the right of "any person aggrieved" to payment of the maximum limit of liability is a per person limit, not a limit that applies to the group of persons aggrieved.

Moreover, "[i]n construing the act . . . this court makes every part operative and harmonious with every other part insofar as is possible [and] the statute must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Inland Wetlands Commission*, 266 Conn. 150, 164, 832 A.2d 1 (2003). Section 49-8 (c) also incorporates the common-law action for damages for failure to release a mortgage. In the same sentence that provides for statutory damages up to a maximum of $5000, § 49-8 (c) also provides that the person failing to release a mortgage "shall be liable . . . in an amount equal to the loss sustained by *such aggrieved person* . . . ." (Emphasis added.) General Statutes § 49-8 (c). "[S]uch aggrieved person" naturally refers back to the phrase "any person aggrieved" in the earlier part of the sentence. See *LaProvidenza* v. *State Employees' Retirement Commission*, 178 Conn. 23, 27, 420 A.2d 905 (1979) ("[t]he word 'such' has been construed as an adjective referring back to and identifying something previously spoken of; the word naturally, by grammatical usage, refers to the last antecedent").

The plaintiffs posit as an example that "two unmarried people, applying separately for a credit card, or a

loan, would be separately aggrieved by the appearance of an unreleased mortgage in their credit or loan." That is, the common-law right of any person aggrieved to damages arising out of the mortgagee's breach of contract; *Skorpios Properties, Ltd.* v. *Waage*, supra, 172 Conn. 155; undoubtedly contemplates that each aggrieved person be treated individually with respect to whatever damages he sustained. See generally *Leventhal* v. *Stratford*, 121 Conn. 290, 299, 184 A. 587 (1936) (on breach of contract, prevailing party "entitled to recover that compensation which will leave him as well off as he would have been had there been full performance"). Ordinarily, it would be anomalous for the legislature to have intended such individual treatment of "any person aggrieved" in one part of the sentence and collective treatment in another. "[I]n the absence of persuasive evidence to the contrary, we may presume that a word used in different parts of the same statutory scheme has the same meaning." (Internal quotation marks omitted.) *State* v. *Ehlers*, 252 Conn. 579, 590, 750 A.2d 1079 (2000).

On the other side of the ledger, if the legislature had intended that $5000 be a per person limit, there would have been no need for it to include the word "maximum"[4] in the phrase "up to a maximum of five thousand dollars . . . ." "No word in a statute should be treated as superfluous." *Winchester* v. *State Board of Labor Relations*, 175 Conn. 349, 355, 402 A.2d 332 (1978).

Moreover, the provision in § 49-8 (c) for a payment to any aggrieved person of $200 per week up to a maximum of $5000 for failure to release a lien or mortgage, plus costs and reasonable attorney's fees, imposed regardless of whether the aggrieved party has sustained

---

[4] "Maximum" is defined as "the highest degree or point reached; upper limit of variation. Webster, Third International Dictionary." *Kalosky* v. *Waterbury*, 1 Conn. App. 105, 108 n.4, 468 A.2d 1264 (1983).

any actual damage, is manifestly a civil penalty. *Buono-core* v. *De Feo*, 76 Conn. 705, 56 A. 510 (1903). This has been the consensus of courts around the country construing statutes analogous to § 49-8 (c). See, e.g., *Dixon* v. *Grossman*, 22 Cal. App. 3d 941, 944, 99 Cal. Rptr. 659 (1972); *Low* v. *Fox*, 56 Iowa 221, 223, 9 N.W. 131 (1881); *Hall* v. *Hurd*, 40 Kan. 740, 742, 21 P. 585 (1889); *Engle* v. *Hall*, 45 Mich. 57, 58, 7 N.W. 239 (1880); *March* v. *Union Trust Co. of Maryland*, 175 S.C. 291, 296–97, 179 S.E. 34 (1935); *Mader* v. *Plano Mfg. Co.*, 17 S.D. 553, 555–56, 97 N.W. 843 (1903); *Shields* v. *Klopf*, 70 Wis. 69, 74, 35 N.W. 284 (1887); 55 Am. Jur. 2d, Mortgages § 436 (1996); 59 C.J.S., Mortgages § 483 (1998). A penalty is "a sum of money [for] which the law exacts payment by way of punishment for . . . not doing some act which is required to be done." (Internal quotation marks omitted.) *Davis* v. *Forman School*, 54 Conn. App. 841, 851, 738 A.2d 697 (1999), quoting Black's Law Dictionary (6th Ed. 1990); see *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).[5] Such statutes are strictly construed against those seeking to impose the penalty and in favor of those on whom such penalties would be imposed. *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 318, 417 A.2d 343 (1979); *Nowak* v. *Nowak*, 175 Conn. 112, 125, 394 A.2d 716 (1978); see *Grooms* v. *Hannon*, 59 Ala. 510, 511 (1877); *Harding* v. *Home Investment & Savings Co.*, 49 Idaho 64, 74, 286 P. 920 (1930); *Sinks* v. *Kimmel*, 221 Ill. App. 416, 419 (1920); *Brown* v. *Yarbrough*, 130 Miss. 715, 724, 94 So. 887 (1923); *Wing* v. *Union Central Life Ins. Co.*, 155 Mo. App. 356, 358, 137 S.W. 11 (1911); *Bullington* v. *Lowe*, 94 Okla. 234, 235, 221 P. 502 (1923);

[5] "A statute may partake of the nature both of a remedial and of a penal statute. . . . In permitting an individual to recover damages as a remedy for an injury sustained by him, [the statute] is a remedial statute." (Citation omitted.) *Dubreuil* v. *Waterman*, 84 Conn. 47, 51, 78 A. 721 (1911); see W. Blackstone, Commentaries on the Laws of England (1765) § 3, pp. 87–88.

*Knudson* v. *Knudson*, 128 Or. 635, 641–42, 275 P. 663 (1929); *Werner* v. *Automobile Finance Co.*, 347 Pa. 217, 218–19, 31 A.2d 898 (1943); *Phillips* v. *Cottage Grove Bank & Trust Co.*, 8 Tenn. App. 98, 103 (1928); *Hector, Inc.* v. *United Savings & Loan Assn.*, 741 P.2d 542, 545 (Utah 1987); *Perkins* v. *Factory Point National Bank*, 137 Vt. 577, 580, 409 A.2d 578 (1979); construing statutes analogous to § 49-8 (c); see also 55 Am. Jur. 2d, supra, § 436; 59 C.J.S., supra, § 483.[6]

Before resorting to extrinsic evidence of legislative intent, Public Act 03-154 also requires the court to consider whether the text of the statute would "yield absurd or unworkable results . . . ." "It is to be presumed that the General Assembly did not intend to work an absurd consequence." *Bridgeport* v. *Stratford*, 142 Conn. 634, 643–44, 116 A.2d 508 (1955). In commercial transactions especially, it is not unusual for several persons to be named as mortgagors in a mortgage. Where a mortgagee fails to release the mortgage timely, such a circum-

[6] Public Acts 2003, No. 03-154, also requires that the court examine the relationship of the statute being interpreted to other statutes. By this, it is understood that the legislature meant "other relevant statutes." (Internal quotation marks omitted.) *In re Bruce R.*, 234 Conn. 194, 207, 662 A.2d 107 (1995). General Statutes § 49-8a is such a statute. Section 49-8a provides a self-help procedure, "a detailed mechanism whereby an attorney for a mortgagor or an officer of a title insurance company can execute and cause to be recorded in the town land records an affidavit stating that the statutory requirements have been complied with and that the mortgage loan has been paid. Subsection (f) of the statute provides that, 'Such affidavit, when recorded, shall constitute a release of the lien of such mortgage or the property described therein.' The statute suggests no litigational means of enforcement. In this respect, it stands in sharp contrast to its much older neighbor, General Statutes § 49-8 (c), which expressly provides a damages remedy for mortgagees who have unsuccessfully sought releases." *Gordon* v. *Tobias*, supra, Superior Court, Docket No. 438895.

Section 49-8a, however, does not illuminate the issues here. The self-help mechanism is provided to the attorney for a "mortgagor" or officer of a title insurance company. It does not employ the phrase "any person aggrieved" on which the argument of the plaintiffs relies.

stance could result in the $5000 limit on the statutory penalty being multiplied many times over—where no actual damages have been sustained by the mortgagors. If this is not necessarily an absurd result, it is not one which the legislature is presumed to have intended.

The court concludes that § 49-8 (c) is neither plain and unambiguous in the sense that "the statute, when read in context, is susceptible to more than one reasonable interpretation"; *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 134 n.19; nor does its plain meaning necessarily yield absurd or unworkable results. Accordingly, the court turns to extratextual evidence of the meaning of the statute, specifically, its legislative history.

Speaking in support of the 1995 amendment to increase the statutory penalty to $5000, Senator Thomas F. Upson stated: "What this [provides] is a cap of a $5,000 penalty. In other words, under this bill, the penalties would be up to $5,000." 38 S. Proc., Pt. 7, 1995 Sess., p. 2197. Senator Upson further stated that the amendment "is going to increase the penalties . . . but not more than $5,000 . . . . The reason there's a cap though, is because we are in the second mortgage business, that is the state banks sell these to secondary sources, we don't want to have an impediment so that people will not buy our mortgages." Id., pp. 2198–99. Before passing the amendment in the House of Representatives, Representative Michael P. Lawlor noted: "This amendment simply sets *a cap of $5,000 on the total penalty*, which is provided for in this bill. The bill provides for a $200 per week civil penalty for failure to provide a release within the designated time period and this would cap that at $5,000." (Emphasis added.) 38 H.R. Proc., Pt. 8, 1995 Sess., p. 2782.

This legislative history, the insertion of the word "maximum" and the strict construction of the penalty

imposed by the statute compel the conclusion that regardless of the number of aggrieved persons, the maximum penalty imposed by § 49-8 (c) is $5000.

The plaintiffs' motion for summary judgment is denied. The defendant's motion for summary judgment is granted. Judgment may enter for the plaintiffs on the first count in the amount of $5000, plus costs and attorney's fees to be hereafter determined after hearing.

