JOHN F. CARR, JR. *v.* PLANNING AND
ZONING COMMISSION OF THE
TOWN OF BRIDGEWATER
(SC 17272)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued January 6—officially released May 17, 2005

*Michael A. Zizka*, for the appellant (defendant).

*Neil R. Marcus*, with whom was *Barbara M. Schellenberg*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, C. J. The defendant, the planning and zoning commission of the town of Bridgewater (zoning commission), appeals from the judgment of the trial court sustaining the appeal by the plaintiff, John F. Carr, Jr., from the zoning commission's denial of the plaintiff's subdivision application seeking approval of an affordable housing development within the meaning of General Statutes (Rev. to 1999) § 8-30g, as amended by Public Acts 1999, No. 99-261, and by portions of Public Acts 2000, No. 00-206 (P.A. 00-206), that have been determined to be retroactive.[1] The zoning commis-

[1] General Statutes (Rev. to 1999) § 8-30g, as amended by Public Acts 1999, No. 99-261, provides in relevant part: "(a) As used in this section: (1) 'Affordable housing development' means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty-five per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that, for at least thirty years after the initial occupation of the proposed development, (i) such dwelling units shall be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a. Of the dwelling units conveyed by deeds containing covenants or restrictions, a number of dwelling units equal to not less than ten per cent of all dwelling units in the development shall be sold or rented to persons and families whose income is less than or equal to sixty per cent of the area median income or sixty per cent of the state median income, whichever is less, and the remainder of the dwelling units conveyed by deeds containing covenants or restrictions shall be sold or rented to persons and families whose income is less than or equal to eighty per cent of the area median income or eighty per cent of the state median income, whichever is less; (2) 'affordable housing application' means any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing; (3) 'assisted housing' means housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing, and any housing occupied by persons receiving rental assistance under chapter 319uu or Section 1437f of Title 42 of the United States Code; (4) 'commission' means a zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planning authority; and (5) 'municipality' means any town, city or borough, whether consolidated or unconsolidated.

sion raises numerous claims on appeal. We affirm the judgment of the trial court.

"(b) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, specified in subparagraph (B) of subdivision (1) of subsection (a) of this section, contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section. Such appeal shall be filed within the time period for filing appeals as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, and shall be made returnable to the superior court for the judicial district where the real property which is the subject of the application is located. Affordable housing appeals, including pretrial motions, shall be heard by a judge assigned by the Chief Court Administrator to hear such appeals. To the extent practicable, efforts shall be made to assign such cases to a small number of judges, sitting in geographically diverse parts of the state, so that a consistent body of expertise can be developed. Unless otherwise ordered by the Chief Court Administrator, such appeals, including pretrial motions, shall be heard by such assigned judges in the judicial district in which such judge is sitting. Appeals taken pursuant to this subsection shall be privileged cases to be heard by the court as soon after the return day as is practicable. Except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable. . . ."

Public Act 00-206, § 1 (g), amended General Statutes (Rev. to 1999) § 8-30g (c) and is now codified at § 8-30g (g), which provides: "Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses, and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." This portion of P.A. 00-206 was determined to be retroactive in *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 701, 780 A.2d 1 (2001).

Public Act 00-206, § 1 (h), amended General Statutes (Rev. to 1999) § 8-30g (d) and is now codified at § 8-30g (h), which provides: "Following a

The record reveals the following relevant facts and procedural history. The plaintiff is the owner of certain property in Bridgewater consisting of three parcels of land totaling approximately twenty-four acres (property). The property is located in an R-2 residential zone.

decision by a commission to reject an affordable housing application or to approve an application with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, the applicant may, within the period for filing an appeal of such decision, submit to the commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the commission, which shall be treated as an amendment to the original proposal. The day of receipt of such a modification shall be determined in the same manner as the day of receipt is determined for an original application. The filing of such a proposed modification shall stay the period for filing an appeal from the decision of the commission on the original application. The commission shall hold a public hearing on the proposed modification if it held a public hearing on the original application and may hold a public hearing on the proposed modification if it did not hold a public hearing on the original application. The commission shall render a decision on the proposed modification not later than sixty-five days after the receipt of such proposed modification, provided, if, in connection with a modification submitted under this subsection, the applicant applies for a permit for an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, and the time for a decision by the commission on such modification under this subsection would lapse prior to the thirty-fifth day after a decision by an inland wetlands and watercourses agency, the time period for decision by the commission on the modification under this subsection shall be extended to thirty-five days after the decision of such agency. The commission shall issue notice of its decision as provided by law. Failure of the commission to render a decision within said sixty-five days or subsequent extension period permitted by this subsection shall constitute a rejection of the proposed modification. Within the time period for filing an appeal on the proposed modification as set forth in section 8-8, 8-9, 8-28, 8-30 or 8-30a, as applicable, the applicant may appeal the commission's decision on the original application and the proposed modification in the manner set forth in this section. Nothing in this subsection shall be construed to limit the right of an applicant to appeal the original decision of the commission in the manner set forth in this section without submitting a proposed modification or to limit the issues which may be raised in any appeal under this section." The retroactivity of P.A. 00-206, § 1 (h), is at issue in this appeal. For the reasons set forth later in this opinion, we conclude that the provision is retroactive.

For convenience, all references in this opinion to subsection (a) and (b) of § 8-30g are to the 1999 revision of the statutes as amended by Public Acts 1999, No. 99-261, unless otherwise indicated. All references to § 8-30g (g) and (h) are to the current version of the statute.

In 1997, the plaintiff filed an application with the zoning commission seeking approval of a subdivision plan for an affordable housing development, which the zoning commission denied. The plaintiff then filed a modified proposal, which the zoning commission also denied. The plaintiff appealed from the denial to the Superior Court. The trial court, *Axelrod, J.*, dismissed the appeal because the proposed water and septic systems had not been approved by the department of public utility control and the department of public health. The court rejected, however, one of the zoning commission's reasons for denial, namely, that the plan had not given due consideration to the effect of the development on wetlands. The court concluded that the public interest in protecting the wetlands did not outweigh the need for affordable housing.

Thereafter, on June 30, 2000, the plaintiff filed with the zoning commission a second application seeking approval of a subdivision plan for an affordable housing development (second application). The department of public health by that time had approved the plaintiff's proposal for subsurface sewage disposal and the department of public health had approved conditionally the development's water well system. When the plaintiff filed the second application, he simultaneously filed a wetlands application with the Bridgewater inland wetlands conservation commission (conservation commission). The zoning commission held a hearing on the second application on August 9, 2000, which was continued to September 13, 2000.

On October 4, 2000, the plaintiff withdrew his wetlands application to the conservation commission. The plaintiff claims that, at the same time, his counsel advised counsel for the zoning commission that the plaintiff intended to file a modified wetlands application with the conservation commission for consideration at its November 1, 2000 meeting. Counsel for the zoning

commission denies any knowledge of such communication. The zoning commission held a hearing on the second application on October 11, 2000, which the plaintiff did not attend.[2] The zoning commission denied the second application on the grounds that: (1) the plaintiff had withdrawn his wetlands application to the conservation commission and, therefore, the zoning commission lacked jurisdiction under General Statutes § 8-26[3] to act on the second application; (2) a letter submitted to the zoning commission by Russell J. Dirienzo, a licensed environmental professional, had raised substantial concerns about the preservation of groundwater and surface water quality on and near the proposed development site; and (3) the plaintiff had not addressed satisfactorily certain concerns raised by the zoning commission at the September 13, 2000 hearing.

On October 27, 2000, counsel for the plaintiff wrote a letter to the chairman of the zoning commission in which he stated that the plaintiff was submitting therewith a modified subdivision proposal (modified application) addressing the reasons for the zoning commission's denial. The letter referred to and incorporated the following materials: (1) a copy of the plaintiff's modified wetlands application to the conservation com-

[2] The plaintiff claims that he did not attend the hearing because he assumed that the zoning commission would continue the hearing until it received a report from the conservation commission. As we have noted, the zoning commission denies that it had knowledge, as of October 11, 2000, that the plaintiff intended to file a modified wetlands application with the conservation commission.

[3] General Statutes § 8-26 provides in relevant part: "If an application involves land regulated as an inland wetland or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. . . ." This statute was amended in 2003 for purposes not relevant to this appeal. See Public Acts 2003, No. 03-177, § 7.

mission, which was being submitted simultaneously with the modified application; (2) copies of two letters that previously had not been made available to the zoning commission; and (3) copies of the documents, reports and drawings that were being submitted to the conservation commission.[4] On November 8, 2000, the zoning commission held a regular meeting at which it considered the October 27, 2000 letter. The plaintiff did not attend the meeting.[5] The zoning commission denied the modified application on the ground that the plaintiff had failed to modify the second application or to present grounds for reconsideration.

The plaintiff appealed from the denial of the modified application to the trial court pursuant to § 8-30g (b) (first appeal). The trial court determined that the October 27, 2000 submission was a modified proposal within the meaning of § 8-30g (h). The court also concluded that, because a hearing had been held on the second application, the plaintiff was statutorily entitled to a public hearing on the modified application. See General Statutes § 8-30g (h) ("[t]he commission shall hold a public hearing on the proposed modification if it held a public hearing on the original application"). Accordingly, the court remanded the matter to the zoning com-

---

[4] There is a dispute as to whether these materials were submitted to the zoning commission on October 27, 2000. The plaintiff testified at an evidentiary hearing before the trial court that he believed that he had filed six sets of plans with the Bridgewater town clerk, three for the zoning commission and three for the conservation commission. The Bridgewater land use coordinator testified that the town clerk had provided her with three sets of plans, which she believed were intended for the conservation commission. The trial court did not make any specific finding as to what materials had been presented to the zoning commission, but concluded that, even if only the October 27, 2000 letter had been submitted, that would have met the statutory requirements for a modified plan.

[5] The plaintiff claims that he did not attend the meeting because he assumed that the zoning commission would hold a public hearing on his modified application pursuant to the requirements of P.A. 00-206, § 1 (h).

mission for a public hearing.[6] Thereafter, the zoning commission filed a motion for articulation and reconsideration in which it asked the court to articulate further whether the zoning commission had jurisdiction over the modified application even after the plaintiff withdrew his wetlands application. The court granted the motion for articulation and ruled that "[t]he fact that the original wetlands application was withdrawn from the [conservation] commission does not deprive the . . . zoning . . . commission of jurisdiction to act on the modified [application]. Due consideration of the wetlands report is nothing more than a condition precedent to the [zoning] commission's decision." Accordingly, it denied the motion for reconsideration.

Meanwhile, on February 7, 2001, the conservation commission had rejected the plaintiff's wetlands application on the ground that "the density of the project is excessive and examples of feasible and prudent alternatives would be to lessen the potential impact on the wetlands by reducing the scope of the project and/or spreading the units out over a longer area . . . ." The plaintiff's appeal to the Superior Court was dismissed and, on June 6, 2002, the plaintiff's petition for certification to appeal to the Appellate Court was denied.

Pursuant to the trial court's remand order in the plaintiff's first appeal, the zoning commission held a public hearing on the modified application on September 10, 2002, and denied it the next day. The reasons for the denial were that the plaintiff had failed to address adequately the issues raised by the conservation commission in its denial of the plaintiff's wetlands application and the issues raised by the zoning commission in its October 11, 2000 denial of the second application. The

---

[6] The zoning commission states in its brief that it did not appeal from this decision to the Appellate Court because, under *Kobyluck* v. *Zoning Board of Appeals*, 70 Conn. App. 55, 57, 796 A.2d 567 (2002), an order remanding a zoning appeal for additional proceedings is not an appealable final decision.

zoning commission also concluded that a conditional approval was not feasible because significant changes would be required to address its concerns.

The plaintiff appealed from the denial to the Superior Court (second appeal). Thereafter, the trial court consolidated the second appeal with the first appeal (consolidated appeal), which had not yet been formally concluded.[7] The trial court sustained the consolidated appeal. With respect to the zoning commission's concerns over storm water discharge, the court concluded that Judge Axelrod had addressed that issue in his ruling dismissing the plaintiff's appeal from the zoning commission's denial of the original application, which had been filed in 1997, and had concluded that it was not a valid reason for denial because the concern did not outweigh the need for affordable housing. Moreover, the court determined that the zoning commission had abandoned this issue by failing to brief it. The court also concluded that the zoning commission's concern about the septic systems had been decided by Judge Axelrod in favor of the plaintiff.

With respect to the zoning commission's reason for denial that the development's wells would adversely affect neighboring wells, the trial court noted that the department of public utility control had determined, and the department of public health had concurred, that the potential for interference was extremely remote.[8] The court also recognized that experts retained

---

[7] We assume that the trial court retained jurisdiction over the first appeal after sustaining the appeal and remanding the matter to the zoning commission because it anticipated that the matter would come before the court again after the zoning commission's decision on the modified application.

[8] Our review of the record reveals that the department of public health had received inquiries from owners of private wells in the area of the proposed development and had requested a report from the plaintiff addressing the issue of whether the proposed wells potentially could interfere with neighboring wells. In response, the plaintiff provided documentation from R.J. Black and Son reporting "its observations from its January, 2000 well drilling operation . . . ." On the basis of the report, both the

by the zoning commission had indicated that, although "it is unlikely that there will be such interference, there is no guarantee." Other wells in the area had run out of water and reported shortfalls. The court concluded that although the evidence "creates a justifiable concern that well interference is possible," it did not provide a sufficient basis for the zoning commission's denial. The court further concluded that, under § 8-30g (g) (1) (C), if the zoning commission had believed that additional tests were required to resolve the issue, it should have engaged experts to perform them.

With respect to the zoning commission's reason for denial that the plaintiff had failed to address the level of radionuclides in the water, the court noted that the plaintiff had provided water samples to the department of public health, which had determined that radionuclide levels were unacceptable. The department had ordered additional samples to determine whether there was a consistent pattern, but no additional samples had been taken. The court concluded that "the defendant's failure to satisfy itself concerning the continued presence of radionuclides and effective means of disposing of them, constitutes a failure of its statutory burden to provide the court with a record that contains sufficient evidence to support its decision." It further concluded that under § 8-30g (g) (1) (C), the zoning commission "must inform the applicant of the nature of the tests it wishes performed and of the results it will accept. . . . If the applicant is unwilling or unable to perform such tests and the zoning authority has engaged its own experts in the field, as in this case, then the authority must cause the tests to be performed itself." The court noted that the tests would involve a considerable expense to the plaintiff and that "because such tests

---

department of public health and the department of public utility control concluded that "any potential for interference is extremely remote or nonexistent, and that this is no longer an issue."

are site specific they cannot be reused if approval is denied. Incurring substantial expense by affordable housing developers who often are nonprofit organizations, would waste financial resources." Ultimately, however, the court ordered the plaintiff, as a condition of approval, to monitor the wells on a quarterly basis for radionuclides and to install treatment apparatus to reduce the concentration to levels acceptable to the department of public health.

Finally, with respect to the reason for denial that the nitrates from the septic systems would infiltrate on-site wells, the trial court first addressed the plaintiff's claim that the zoning commission had no authority to require a longer distance between wells and septic systems than the seventy-five feet required by the department of public health. Specifically, the plaintiff challenged the report by the zoning commission's expert, Robert L. Melvin, a consulting hydrologist, that the distance was arbitrary and inadequate to protect the wells. The court concluded that, in the absence of specific municipal standards, the zoning commission had no authority to require a greater distance. It further concluded that Melvin's report did not constitute sufficient evidence that nitrates could make their way into the wells.

The court then addressed the report by Brian C. Curtis, a professional engineer and another expert for the zoning commission, pertaining to "possible infiltration of nitrogen into the domestic water supply as a result of the failure of the leach field system to dilute the nitrogen adequately." The court concluded that there was "some quantifiable probability that nitrogen would not be renovated adequately so as to prevent pollution of the on-site wells."[9] The court concluded, however,

---

[9] We have carefully examined the reports by Melvin and Curtis and it is not entirely clear to us how to reconcile the court's conclusion, on the basis of Melvin's report, that there was insufficient evidence that effluents from the septic fields would infiltrate on-site wells, with its conclusion, on the basis of Curtis' report, that there was a quantifiable probability that nitrogen

that the zoning commission could have conditioned approval on requiring the plaintiff to perform a "nitrogen renovation analysis" and, if the results of the analysis were unfavorable, on requiring the plaintiff to take steps to reduce the impact of nitrogen loading. The court specifically rejected the zoning commission's suggestion that concerns about water supply and sewage disposal could be addressed by reducing the density of the subdivision or incorporating adjacent land also owned by the plaintiff. It concluded that a reduction in density would be inconsistent with the public policy underlying the statutory affordable housing provisions in light of the fact that only 0.13 percent of the housing stock in Bridgewater qualified as affordable housing. The court further concluded that the zoning commission had no statutory authority to require the plaintiff to incorporate additional land into the project.

The trial court reversed the zoning commission's denial of the modified application and imposed the following conditions on approval. First, the court required the plaintiff to consolidate the three parcels of property into one parcel, thereby triggering review of the septic systems by the department of environmental protection, including an appropriate nitrate dilution analysis. Second, the court ordered the plaintiff to perform "[w]ater-well draw down tests . . . sufficient to determine whether and to what extent wells on adjacent property will be affected by the wells proposed for this development," and to "comply with all recommendations which those tests produce. If no state agency is willing to claim jurisdiction then the results shall be approved by a licensed hydraulic engineer." Third, the court required the plaintiff to monitor the wells for radionuclides and to ensure compliance with applicable regulations.

---

contained in the wastewater would contaminate the wells. We assume that the court intended to clarify that it was relying on Curtis' report, not Melvin's.

Upon the granting of certification, the zoning commission appealed from the trial court's ruling to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The zoning commission claims on appeal that the trial court, in the first appeal, improperly determined that the zoning commission retained jurisdiction over the plaintiff's second application even after he withdrew his wetlands application on October 4, 2000, and that the plaintiff was not required to submit a new subdivision application rather than a modified application and that the plaintiff was entitled to a public hearing on the modified application pursuant to P.A. 00-206, § 1 (h). The zoning commission further claims that the trial court, in the consolidated appeal, improperly: (1) substituted its views for the views of the zoning commission in concluding that the conservation commission's rejection of the plaintiff's wetlands application did not justify the zoning commission's denial of the modified application; (2) determined that it was bound by dicta in Judge Axelrod's ruling on the appeal from the denial of the original application; (3) determined that the plaintiff was not required to file a new subdivision application rather than a modified application; (4) determined that the conservation commission's denial of the plaintiff's wetlands application did not render the appeal moot; and (5) required the zoning commission to approve a deficient proposal and to perform additional studies. We affirm the judgment of the trial court.

I

We first address the zoning commission's claim that the trial court, in the first appeal, improperly determined that the plaintiff's withdrawal of his wetlands application to the conservation commission on October 4, 2000, did not deprive the zoning commission of jurisdiction over the second application, thereby requiring

the plaintiff to submit a new subdivision application rather than a modified proposal. We disagree.

Whether the relevant statutes deprive the zoning commission of jurisdiction over a subdivision plan for an affordable housing plan when the applicant has withdrawn its application to the conservation commission is a question of statutory interpretation over which our review is plenary. See *River Bend Associates, Inc.* v. *Planning Commission,* 271 Conn. 41, 55, 856 A.2d 959 (2004). We begin our analysis with the language of the relevant statutes. General Statutes § 8-26 provides in relevant part: "If an application [for approval of a subdivision plan] involves land regulated as an inland wetland or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. . . ." General Statutes § 8-7d (a)[10] provides in relevant part: "In all matters wherein a formal . . . application . . . must be submitted to a . . . planning and zoning commission . . . and a hearing is required . . . such hearing shall commence within sixty-five days after receipt of such . . . application . . . and shall be completed within thirty-five days after such hearing commences . . . . All decisions on such matters shall be rendered within sixty-five days after

[10] When the plaintiff submitted the second application and the modified application, the timing of public hearings and decisions on subdivision applications was governed by General Statutes (Rev. to 1999) § 8-26d. In 2003, § 8-26d was amended to provide that all public hearings and decisions be made in accordance with the timing provisions of § 8-7d. See Public Acts 2003, No. 03-177, § 9. The current provisions of § 8-7d that are relevant to this appeal are substantively identical to the relevant provisions of General Statutes (Rev. to 1999) § 8-26d. For convenience, we refer to the current version of the statutes.

completion of such hearing . . . ." General Statutes § 8-7d (e) provides: "Notwithstanding the provisions of this section, if an application involves an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, and the time for a decision by a zoning commission or planning and zoning commission established pursuant to this section would elapse prior to the thirty-fifth day after a decision by the inland wetlands agency, the time period for a decision shall be extended to thirty-five days after the decision of such agency. The provisions of this subsection shall not be construed to apply to any extension consented to by an applicant or petitioner."

The zoning commission argues that these statutes were intended to deprive the zoning commission of jurisdiction to consider a subdivision application when the applicant has failed to submit, or has withdrawn, a required application to the conservation commission in a timely manner. We disagree. We conclude that a more reasonable interpretation of these statutes is that the zoning commission may find an applicant's failure to submit the required application to the conservation commission "no later than the day the application is filed for the subdivision"; General Statutes § 8-26; to be a valid ground for denying a subdivision application. We note that it is not uncommon for an applicant to withdraw and resubmit several revisions of a wetlands application over the course of a proceeding in an attempt to address the wetlands agency's concerns. See, e.g., *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 64, 848 A.2d 395 (2004). If we were to conclude that the withdrawal of such an application, in and of itself, automatically and permanently deprived the zoning commission of jurisdiction, we would cut off this important avenue for resolving issues that are often complex and difficult.

We will not assume that the legislature intended such a counterproductive result.

Thus, we conclude that the language providing that "[t]he commission *shall not render a decision* until the inland wetlands agency has submitted a report with its final decision to such commission"; (emphasis added) General Statutes § 8-26; and that "the time period for a decision [by the zoning commission] *shall be extended* to thirty-five days after the decision of such agency"; (emphasis added) General Statutes § 8-7d (e); was intended to apply only when the applicant has complied with the requirement to submit an application to the wetlands agency and is engaged in ongoing negotiations with the agency. If an applicant simply fails to submit a wetlands application or if he withdraws the wetlands application and the zoning commission has no reason to believe that the withdrawal is part of an ongoing negotiation process, then the zoning commission reasonably could render a decision denying the subdivision plan on the ground that the applicant had not complied with a statutory requirement.[11]

Accordingly, we conclude in the present case that the trial court properly determined that the plaintiff's withdrawal of his wetlands application did not deprive the zoning commission of jurisdiction over the application, thereby requiring the plaintiff to submit a new subdivision application. Even if we assume that the zoning commission had no reason to believe that the plaintiff intended to submit a revised wetlands applica-

---

[11] We recognize that this conclusion contemplates a certain level of cooperation and communication among the applicant, the conservation commission and the zoning commission. We further recognize that whether an applicant is engaged in ongoing negotiations with the conservation commission and how long such proceedings reasonably may be extended are to some degree questions of judgment. Because the plaintiff does not challenge the propriety of the zoning commission's denial of his second application in this appeal, we need not address those issues here.

tion and, therefore, that it properly denied the second application, the plaintiff was entitled to submit a modified subdivision application after the denial.

The zoning commission argues that such a result is untenable, however, because it means that an applicant could submit a subdivision application and, merely by failing to submit a required wetlands application to the conservation commission or by withdrawing the application, keep the subdivision application pending indefinitely, thereby immunizing the applicant from compliance with later regulatory amendments. See General Statutes § 8-28b (after subdivision plan has been filed, it may not be disapproved because it does not comply with change in regulations taking effect after filing). We have concluded, however, that a commission may deny a subdivision application if the applicant has failed to submit a required application to the conservation commission or has withdrawn it and is not engaged in ongoing negotiations. After such a denial, if the applicant intends to submit a modified subdivision application to the zoning commission, he must do so "within the period for filing an appeal . . . ." General Statutes § 8-30g (h). Thus, an applicant does not have the ability to delay indefinitely proceedings on an affordable housing subdivision application. Accordingly, we reject this claim.

II

We next address the zoning commission's claim that the trial court, in the first appeal, improperly ordered that the zoning commission, on remand, conduct a public hearing on the plaintiff's modified application pursuant to P.A. 00-206, § 1 (h). The zoning commission argues that, because the effective date of P.A. 00-206 was October 1, 2000, and the plaintiff filed his second application on June 30, 2000, the court improperly applied the statute retroactively to this proceeding. The

plaintiff counters that: (1) the application of the statute to his modified application was not retroactive because the modified application was filed on October 27, 2000, after the effective date of the statute; and (2) even if the application of the statute was retroactive, the trial court properly concluded that the statute was procedural and, therefore, applied retroactively. We conclude that P.A. 00-206, § 1 (h), is retroactive and, therefore, that the trial court properly ordered a public hearing on remand.

Whether P.A. 00-206, § 1 (h), applies retroactively is a question of statutory interpretation over which this court has plenary review. See *State* v. *Nowell*, 262 Conn. 686, 701, 817 A.2d 76 (2003). In making this determination, "[o]ur point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The obligations referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only." (Internal quotation marks omitted.) *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 517, 767 A.2d 692 (2001). "The rule is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation. . . . In civil cases, however, unless considerations of good sense and justice dictate otherwise, it is presumed that procedural statutes will be applied retrospectively. . . . Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact." (Citations omitted.) *Moore* v. *McNamara*, 201

Conn. 16, 22, 513 A.2d 660 (1986). "While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *Davis* v. *Forman School*, 54 Conn. App. 841, 854–55, 738 A.2d 697 (1999). The rule that procedural statutes will be applied retrospectively applies to pending cases. *Roberts* v. *Caton*, 224 Conn. 483, 488, 619 A.2d 844 (1993).

We begin our analysis with the language of the statute. Prior to the enactment of P.A. 00-206, § 1 (h), General Statutes (Rev. to 1999) § 8-30g (d) provided in relevant part: "The commission may hold a public hearing and shall render a decision on the proposed modification within forty-five days of the receipt of such proposed modification." By enacting P.A. 00-206, § 1 (h), the legislature deleted that language and amended the statute to provide that "[t]he commission shall hold a public hearing on the proposed modification if it held a public hearing on the original application and may hold a public hearing on the proposed modification if it did not hold a public hearing on the original application. The commission shall render a decision on the proposed modification not later than sixty-five days after the receipt of such proposed modification, provided, if, in connection with a modification submitted under this subsection, the applicant applies for a permit for an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, and the time for a decision by the commission on such modification under this subsection would lapse prior to the thirty-fifth day after a decision by an inland wetlands and watercourses agency, the time period for decision by the commission on the modification under this subsection shall be extended to thirty-five days after the decision of such agency." Gen-

eral Statutes § 8-30g (h); see also P.A. 00-206, § 1 (h). Thus, P.A. 00-206, § 1 (h) amended the statute to require a public hearing on the proposed modification if a public hearing was held on the original application and to impose a new timetable for decisions on modified proposals.

Both the language of P.A. 00-206, § 1 (h), and its legislative history are silent as to whether these changes were intended to be retrospective. It is clear, however, that the amendment did not create, define or regulate a substantive right, but instead "prescribes the methods of enforcing [a right] or obtaining redress."[12] (Internal quotation marks omitted.) *Davis* v. *Forman School*, supra, 54 Conn. App. 855. Thus, the amendment was procedural in nature and we must presume that it was intended to apply retroactively. Accordingly, we conclude that the trial court properly ordered the zoning commission to conduct a public hearing on the plaintiff's modified application.[13]

The zoning commission points out, however, that in addition to amending the procedural provisions of § 8-30g (d), now codified at § 8-30g (h), P.A. 00-206 enacted new substantive requirements for an affordable housing development. See P.A. 00-206, § 1 (a) (6) through (e),

---

[12] The zoning commission argues that "[t]he amendment to the statutory timetable for making a decision affected substantive rights" and, therefore, is presumptively prospective. We disagree. The substantive right at issue is the plaintiff's right to build an affordable housing development, not his right to obtain a decision from the commission within a certain time frame.

[13] We reject the plaintiff's claim that, because P.A. 00-206, § 1 (h) became effective before he filed his modified application, the trial court's application of the statute was not retroactive. The purpose of the modification provision of § 8-30g (h) is to allow an application proceeding to continue after an original application has been denied instead of requiring the applicant to initiate a new proceeding. Thus, the submission of a modified application does not commence a separate proceeding, but is part of a pending proceeding. We have recognized implicitly that the application of a procedural statute to a legal proceeding that has already commenced when the statute becomes effective is retroactive. See *Roberts* v. *Caton*, supra, 224 Conn. 488.

now codified at General Statutes § 8-30g (a) (6) through (e). It further points out that the plaintiff's modified application did not meet these new requirements. The zoning commission argues that "the plaintiff cannot have it both ways; either [P.A. 00-206] applied to him or did not."

We recognize that this court has held that, as a general rule, "[a]bsent a contrary legislative directive, it is presumed that if any part of an act applies retroactively, all of it is retroactive." (Internal quotation marks omitted.) *Green* v. *General Dynamics Corp.*, 245 Conn. 66, 78, 712 A.2d 938 (1998). We conclude, however, that P.A. 00-206 is an exception to that rule. Although this court has not previously considered whether the portion of P.A. 00-206 now codified at § 8-30g (h) is retroactive, we previously have recognized that portions of P.A. 00-206 were intended to be clarifying and, therefore, retroactive; see *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 21–22, 856 A.2d 973 (2004) (P.A. 00-206, § 1 [g], pertaining to standard of review on appeal, was intended to be clarifying and is, therefore, retroactive); while other portions of the act did not apply retroactively. See id., 33 n.23, 36 (requirement for affordability plan in P.A. 00-206, § 1 [b] [1], did not apply retroactively). Thus, we have recognized that the statutory subsections that comprise P.A. 00-206 are not so inextricably intertwined or interrelated that it would be illogical or infeasible to apply the procedural and clarifying portions of the act retroactively and the substantive portions prospectively. Indeed, while the legislative history of P.A. 00-206, § 1 (g) makes it abundantly clear that the legislature intended for the appeal provision to be retroactive; see *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 723–25, 780 A.2d 1 (2001); nothing in the legislative history remotely suggests that the substantive changes to § 8-30g were intended to apply retroactively. In the absence

of any such expression of legislative intent, we must presume that the legislature did not intend for the substantive portions of P.A. 00-206 to have retrospective application.[14] Accordingly, we reject this claim.

## III

We next consider the zoning commission's claim that the trial court improperly disregarded the conservation commission's denial of the plaintiff's wetlands application in sustaining the consolidated appeal. Because this claim is closely related to the zoning commission's claim that the trial court improperly determined that it was bound by dicta in Judge Axelrod's ruling on this issue, we consider the claims together. We reject both claims.

As a preliminary matter, we set forth the standard of review. "[I]n conducting its review in an affordable housing appeal, the trial court must first determine whether 'the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record.' General Statutes § 8-30g (g). Specifically, the court must determine whether the record establishes that there is more than a mere theoretical possibility, but not necessarily a likelihood, of a specific harm to the public interest if the application is granted. If the court finds that such sufficient evidence exists, then it must conduct a plenary review of the record and determine independently whether the commission's decision was necessary to protect substantial interests in health, safety or other matters that the commission legally may consider, whether the risk of such harm to such public interests

---

[14] Indeed, the zoning commission does not argue that the entire act should be applied retroactively. Rather, it suggests that if some portions of the act cannot be applied retroactively, then none of it should be. This is clearly inconsistent with our holding in *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, supra, 256 Conn. 728, that P.A. 00-206, § 1 (g), is retroactive.

clearly outweighs the need for affordable housing, and whether the public interest can be protected by reasonable changes to the affordable housing development." *River Bend Associates, Inc.* v. *Zoning Commission*, supra, 271 Conn. 26. "Because the plaintiff['s] appeal to the trial court is based solely on the record, the scope of the trial court's review of the [commission's] decision and the scope of our review of that decision are the same." (Internal quotation marks omitted.) Id., 26 n.15.

General Statutes § 8-26[15] provides in relevant part: "If an application involves land regulated as an inland wetland or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency." This court previously has stated that this statutory provision "recognizes that, as a practical matter, a wetlands agency's determination that the construction of a subdivision would have an adverse effect on the wetlands does not necessarily render the subdivision infeasible. A [planning] commission could determine, for example, that the subdivision application should be modified to avoid any such adverse effect. Moreover, the statutory provision vests discretion in the commission to determine that, even if the adverse effects cannot be avoided, they do not justify denial of the subdivision. Thus, the statute effectively gives the commission discretionary authority to contravene the agency's decisions. Again, this makes

---

[15] As we have noted, § 8-26 was amended in 2003 for purposes not relevant to this appeal. See footnote 3 of this opinion. For convenience, we refer to the current version of the statute.

sense in light of the fact that the risk of damage to wetland areas does not necessarily render a subdivision plan practically infeasible, but may merely present a public policy concern." *River Bend Associates, Inc.* v. *Planning Commission*, supra, 271 Conn. 62. It is clear, therefore, that the report of a conservation commission is not binding on a planning and zoning commission in considering a subdivision application.

With these principles in mind, we turn to the zoning commission's claim that the court improperly determined in the consolidated appeal that the conservation commission's decision denying the plaintiff's wetlands application was not a valid reason for denying the modified application. In its brief to the trial court, the zoning commission quoted the conservation commission's denial of the plaintiff's wetlands application and made the claim that, as a matter of law, "regardless of the merits of an affordable housing project, if that project cannot overcome the concerns of [the conservation commission], the project cannot be built. The need for affordable housing does not outweigh the need to protect wetlands and watercourses."[16] The trial court

[16] In support of this statement, the zoning commission argues on appeal that the fact that the legislature exempted wetlands applications from the affordable housing provisions; see General Statutes § 8-30g (a) (4) (as used in affordable housing statute, " '[c]ommission' " is defined as "zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planning authority"); indicates that the legislature did not intend for the decisions of conservation commissions to be subject to the heightened scrutiny provided by § 8-30g (g). This argument ignores the fact that a planning and zoning commission is required only to give "due consideration" to the decisions of a conservation commission in considering a subdivision application. See General Statutes § 8-26. Accordingly, the decisions of a conservation commission are not binding on a planning and zoning commission in a subdivision proceeding. Moreover, a planning and zoning commission, which *is* subject to the affordable housing provisions, is required to balance the harm caused by an affordable housing development against the need for affordable housing. See General Statutes § 8-30g (g). Accordingly, a decision by a conservation commission denying a wetlands application is afforded less deference in an affordable housing appeal than it is afforded in other subdivision proceedings.

rejected this claim on the ground that it had been abandoned by virtue of the zoning commission's failure to brief it adequately. Although we are not entirely convinced that this issue was briefed so inadequately as to be deemed abandoned, we conclude that the trial court properly determined that the zoning commission's brief did not support a finding that the conservation commission's report was a valid reason for denying the modified application.

As we have indicated, contrary to the zoning commission's statement to the trial court, the report of a conservation commission is not binding on a planning and zoning commission in reaching a decision on an ordinary subdivision application. Rather, a planning and zoning commission need only give "due consideration" to a conservation commission's report. See General Statutes § 8-26. A fortiori, the report of a conservation commission is not binding on a planning and zoning commission in the affordable housing context, where the burden is on the planning and zoning commission to weigh the potential harm to the wetlands against the town's need for affordable housing and to provide persuasive legal and policy reasons that the subdivision application should be denied. See *River Bend Associates, Inc.* v. *Zoning Commission*, supra, 271 Conn. 25 n.14. The record in the present case shows that the zoning commission did not engage in any such weighing process. Instead, it simply assumed that a determination by the conservation commission that a subdivision has the potential to cause damage to wetlands always outweighs the need for affordable housing. Accordingly, we conclude that the trial court properly determined that the zoning commission had not met its burden under § 8-30g (g) and, therefore, that the conservation commission's denial of the wetlands application was not a valid reason for denying the modified application. In light of this conclusion, we need not address the

zoning commission's claim that the trial court improperly determined that the issue had been decided by Judge Axelrod in the plaintiff's appeal from the denial of the original application.

## IV

We next address the zoning commission's claim that a renewed subdivision application that contains changes made in order to comply with the legal or regulatory requirements of a coordinate agency does not constitute a modification to a pending application but must be treated as a new application. Accordingly, it implicitly argues that the trial court improperly ordered the zoning commission to approve the modified application instead of requiring the plaintiff to file a new application incorporating the changes intended to address concerns raised by the conservation commission in its denial of the wetlands application. We disagree.

Whether § 8-30g requires the submission of a new application when the original application had been denied for failure to comply with the legal and regulatory requirements of a coordinate agency is a question of law over which our review is plenary. See id., 55. We begin with the language of the statute. General Statutes § 8-30g (h) expressly provides in relevant part that "[f]ollowing a decision by a commission to reject an affordable housing application . . . the applicant may . . . submit to the commission a proposed modification of its proposal responding to some or all of the objections . . . which shall be treated as an amendment to the original proposal. . . ." Nothing in this language suggests that it was intended to apply only when the application was denied for reasons other than the applicant's failure to comply with the legal or regulatory requirements of a coordinate agency. Moreover, the zoning commission has not offered, and we cannot conceive of, any public policy reasons that the legislature

might have intended to limit the application of the statute in such a way. We conclude, therefore, that an applicant may submit a modified proposal pursuant to § 8-30g (h) regardless of the reasons that the original application was denied. We further conclude that a modified proposal is subject to the same review as the original application pursuant to § 8-30g (g). Thus, if the trial court determines on appeal from a denial of a modified proposal that the commission has not met its burden under § 8-30g (g), the trial court "shall wholly or partly revise, modify, remand or reverse" the commission's decision. Accordingly, we conclude that the trial court properly reversed the zoning commission's decision denying the modified application and imposed certain conditions on the approval, and was not required to order the plaintiff to submit a new application incorporating those conditions.

The zoning commission argues, however, that under *Pinchbeck* v. *Planning & Zoning Commission*, 69 Conn. App. 796, 796 A.2d 1208, cert. denied, 261 Conn. 928, 806 A.2d 1065 (2002), and *Grasso* v. *Zoning Board of Appeals*, 69 Conn. App. 230, 794 A.2d 1016 (2002), any land use application that is revised in order to comply with the legal and regulatory requirements of a coordinate agency must be treated as a new application. We disagree. Because neither case involved an affordable housing application subject to the provisions of § 8-30g (h), both cases are inapposite here. Moreover, even in the absence of the express provisions of § 8-30g (h) allowing an applicant to submit a modified affordable housing proposal, *Grasso* and *Pinchbeck* would provide little support for the zoning commission's claim. *Grasso* merely held that a landowner is *permitted* to submit a *new* permit application to the land use authority when the new application addresses the reasons that the original application was denied by a coordinate agency. See *Grasso* v. *Zoning Board of*

*Appeals,* supra, 245–48. It does not suggest that an applicant is *prohibited* from submitting a *modified* application if the original application was denied by a coordinate agency. Furthermore, the case draws no distinction between permit denials resulting from the failure to meet the land use authority's own requirements and permit denials resulting from the failure to meet another agency's requirements.

Although *Pinchbeck* offers more support than *Grasso* for the zoning commission's general argument that land use applications that have been revised to meet another agency's regulatory requirements must be treated as new applications, that case misinterpreted our precedent and, accordingly, is of questionable precedential value. In *Pinchbeck,* the defendant landowners submitted a coastal area management site plan application to the defendant, the planning and zoning commission of the town of Guilford. *Pinchbeck* v. *Planning & Zoning Commission,* supra, 69 Conn. App. 798. The commission approved the application, but later rescinded the approval. Id. The landowners then submitted a second application to the commission in order to comply with wastewater requirements mandated by the state department of health. Id., 798–801. After the commission approved the second application, the plaintiffs, who were abutting landowners, appealed. Id., 799. The trial court dismissed the appeal and the plaintiffs appealed to the Appellate Court claiming, inter alia, that the commission was required to treat an application that had been revised to meet a state agency's regulatory requirements as a new application subject to de novo review by the commission. Id., 799–800. The Appellate Court agreed and, accordingly, reversed the judgment of the trial court. Id., 802. The sole authority cited by the Appellate Court in support of its conclusion was this court's statement in *Koepke* v. *Zoning Board of Appeals,* 230 Conn. 452, 458, 645 A.2d 983 (1994), that "[a] subse-

quent application made in order to bring a prior application into compliance with applicable regulations, no matter how minor the work involved may be, is clearly not minor in regard to its significance and effect." (Internal quotation marks omitted.) *Pinchbeck* v. *Planning & Zoning Commission,* supra, 801–802.

In *Koepke,* however, this court had held only that, when a revised zoning permit application had been submitted to a zoning authority after the approval of the original application had been revoked and the revocation had not been appealed, the decision on the revised permit application was the operative decision for purposes of determining the timeliness of an appeal by an abutting landowner. *Koepke* v. *Zoning Board of Appeals,* supra, 230 Conn. 457–58. We did not suggest that the submittal of a modified permit application after the original application had been denied for failure to meet zoning regulations was prohibited or that such an application must be treated by the land use authority as a new application. Indeed, the facts of *Koepke* suggest that the revised application submitted to the zoning authority in that case had *not* been treated as a new application. See id., 454 (landowner submitted revised application without payment of additional application fee and zoning officer issued second permit bearing same number as original permit). Accordingly, we do not believe that *Koepke* supports the Appellate Court's conclusion in *Pinchbeck.* Thus, neither *Grasso* nor *Pinchbeck* supports the zoning commission's claim that the trial court improperly ordered the zoning commission to approve the modified application instead of ordering the plaintiff to submit a new application. Accordingly, we reject this claim.

V

We next address the zoning commission's claim that the trial court improperly determined that the consoli-

dated appeal was not moot in light of the conservation commission's denial of the plaintiff's wetlands application. The zoning commission argues that the relief sought by the plaintiff, namely, approval of the modified application, could not be granted because the conservation commission's decision required substantial changes to the layout and density of the development. We disagree.

As we have concluded previously, the zoning commission was not bound by the decision of the conservation commission in reaching its decision on the modified application. Accordingly, it was within the trial court's authority to determine that the zoning commission had not met its burden of proving that the concerns of the conservation commission outweighed the town's need for affordable housing and to order a conditional approval of the modified application even though the development as constructed would not meet the approval of the conservation commission. Accordingly, we conclude that the trial court properly determined that it could grant the relief sought in the consolidated appeal and, therefore, that the appeal was not moot.

## VI

Finally, we address the zoning commission's claim that the trial court improperly concluded that the zoning commission's burden of proving that important public interests "cannot be protected by reasonable changes to the affordable housing development"; General Statutes § 8-30g (g) (1) (C); implied a collateral duty to approve a deficient proposal subject to additional studies to be performed by the zoning commission. Specifically, the zoning commission argues that the trial court found that the plaintiff's modified application was deficient because he failed to establish that: (1) the installation of the proposed wells would not interfere with the water supply on an adjacent property; (2) the well water did

not contain unacceptably high levels of radionuclides; and (3) the on-site sewage disposal systems would provide for adequate removal of nitrates on two of three proposed lots. In light of these deficiencies, the zoning commission argues, the court improperly held that, in order to justify its denial of the modified application, the burden was on the zoning commission to perform studies to determine the extent to which the development would adversely affect the public interest in a safe water supply. We conclude that the trial court did not impose any such burden on the zoning commission. We further conclude that the conditions imposed by the trial court were "reasonable changes" within the meaning of § 8-30g (g) (1) (C).

With respect to the well interference issue, the court found that both the department of health and the department of public utility control had reviewed documentation provided by the plaintiff concerning the proposed well drilling operation and had concluded that the possibility of interference with neighboring wells was "extremely remote." It also found, however, that the zoning commission's expert had concluded that there was "no guarantee" that interference would not occur. The trial court determined that this evidence established that there was "a justifiable concern that well interference is possible" and provided "a reasonable basis for the [zoning commission] itself to have sponsored and supervised the performance of tests designed to provide more definite answers to these questions."[17]

[17] Ultimately, the court ordered as a condition of approval that "[w]ater-well draw down tests shall be performed sufficient to determine whether and to what extent wells on adjacent property will be affected by the wells proposed for this development." In light of the trial court's conclusion that interference with neighboring wells was a mere possibility, it is not clear to us why the trial court imposed this condition. Nor is it entirely clear to us whether the trial court intended that the plaintiff or the zoning commission would be required to perform the tests. The court stated in the body of its opinion that it was the zoning commission's responsibility to sponsor and supervise the performance of such tests. The court's order, however, did not specify who was responsible for conducting the tests. We note that

The zoning commission argues that, by making these determinations, the *court improperly placed* on the zoning commission the burden of providing information sufficient to make an intelligent and informed decision. We disagree. In making its determination that well interference was *possible*, the trial court took as its starting point information provided by the plaintiff that the likelihood of such interference was extremely remote or nonexistent. Thus, the court did not place the initial burden of establishing that there would be no such interference on the zoning commission. Rather, the trial court determined that, in light of the information provided by the plaintiff, the zoning commission could not deny the modified application unless it established that there was a quantifiable probability of such interference and that reasonable changes to the modified application would not adequately address the problem. See *River Bend Associates, Inc.* v. *Zoning Commission*, supra, 271 Conn. 26 (mere possibility of harm is not sufficient evidence to justify denial of affordable housing application). We conclude that this determination was consistent with the requirements of § 8-30g (g) (1) (C) and did not impose any unwarranted burden on the zoning commission.

---

conditions of approval generally are imposed on an applicant, not the decision-making body. Moreover, the plaintiff appears to concede that he is responsible for performing this condition. We conclude, therefore, that the trial court intended to convey that the burden had been on the zoning commission to establish that there was a quantifiable probability of interference with neighboring wells before *denying* the modified application. Because the court concluded that the modified application should be *approved*, however, it placed the burden on the plaintiff to perform the tests. As we have indicated, it is not clear to us why this condition was necessary in light of the court's conclusion that interference with neighboring wells was a mere possibility. Moreover, the plaintiff already had submitted his consultant's report to the department of public health, which concluded, on the basis of the report, that interference was "no longer an issue." Because the plaintiff has not appealed from imposition of the condition, however, we need not consider the question.

With respect to the issue of radionuclides in the well water, our review of the record reveals the following additional relevant facts. The department of public health had determined that the well water samples provided by the plaintiff for all three proposed wells were "satisfactory except for radium." The department approved the wells on the condition that, "[i]f the average of remaining quarterly radiological samples exceed the maximum allowable level of 5 for radium then treatment of the well[s] is required." It further ordered that "[i]f treatment is proposed for the new well[s], the proposal must be reviewed and approved by the [water supplies section of the department of public health] prior to installation . . . ." In a September 7, 2002 letter to counsel for the zoning commission, Melvin, an expert for the commission, reported that it was likely that some treatment options would not be feasible at the proposed development site and that "[u]ntil the additional quarterly water samples requested by the [department of public health] in June 2000 are collected and analyzed it is not possible to determine (a) if [the department of public health] will require treatment for natural radionuclides, (b) which radionuclides will require treatment and (c) if there are feasible treatment methods that can be employed at this site."

The trial court found that, prior to submitting the modified application, the plaintiff had not taken quarterly samples as ordered by the department of public health. It concluded, however, that in the absence of evidence establishing that it was not possible to dispose of excess radionuclides, the plaintiff's failure to perform the tests did not constitute an adequate reason for denying the application. Instead, the court placed the burden on the zoning commission to "inform the applicant of the nature of the tests it wishes performed and of the results it will accept. . . . If the applicant is unwilling or unable to perform such tests and the zoning authority

has engaged its own experts in the field, as in this case, then the authority must cause the tests to be performed itself." The court reasoned that it would be a waste of the plaintiff's financial resources to force him to conduct the tests himself when it was possible that the modified application would be denied. Ultimately, however, the court imposed as a condition of approval that the plaintiff must monitor the wells on a quarterly basis and, if necessary, install treatment apparatus meeting state regulatory standards.

The zoning commission again argues that, by concluding that the zoning commission was required to conduct further testing, the trial court improperly created a new rule, inconsistent with the statutory scheme, that "an applicant has no obligation whatsoever to provide information to the commission; if the information is inadequate, the commission must approve the application pending the receipt of the missing data." We disagree with this characterization of the trial court's ruling. It is reasonable to conclude that the basis for the zoning commission's decision that the radionuclide issue was a valid reason for denying the modified application was its expert's report suggesting that it was *possible* that *no* method of treating radionuclides would be feasible at the proposed development site and, accordingly, that no reasonable change could be made to protect the public interest in a safe domestic water supply.[18] As we have noted repeatedly in this opinion, however, the mere *possibility* of harm to an important public interest is not a valid reason for denying an affordable housing application. Accordingly, the trial

[18] Melvin's report stated that it was "*likely* that *some* treatment options . . . may not be feasible." (Emphasis added.) It did not state, however, that it was likely that *no* treatment option would be feasible. It merely indicated that it was not possible to determine at that time whether there were feasible treatment options. In other words, there was some unquantified probability that there would be no feasible treatment option. The department of public health expressed no such concern when it conditionally approved the wells.

court properly concluded that the burden was on the zoning commission to establish some quantifiable probability that there would be no feasible method for removing excess radionuclides from the well water before denying the application. Because the zoning commission failed to do so, we conclude that the condition of approval that the plaintiff monitor the wells on a quarterly basis and install treatment equipment as necessary was a reasonable change within the meaning of § 8-30g (g) (1) (C).

Finally, with regard to the nitrate issue, the court required additional testing, to be supervised by the department of environmental protection, because there was sufficient evidence supporting the zoning commission's determination that the septic systems, as designed, might be inadequate to dilute the nitrogen contained in the effluent sufficiently to avoid well contamination. If testing were to reveal a problem, then the plaintiff would be required to comply with any recommendations by the department of environmental protection to reduce nitrogen loading. Again, the court did not specify who would be responsible for the testing. It is reasonable to conclude, however, that the court intended that the plaintiff would conduct the tests because the testing was imposed as a condition of approval, conditions of approval generally are imposed on the applicant and the plaintiff does not dispute that it is his responsibility to conduct this testing. See footnote 17 of this opinion. The zoning commission points to no evidence in the record suggesting that if testing revealed a likelihood of groundwater contamination, the techniques for reducing nitrogen loading referred to by the trial court would not be feasible or effective. Accordingly, we conclude that the trial court did not impose any undue burden on the zoning commission and that the condition requiring additional testing and,

if necessary, treatment was a reasonable change within the meaning of § 8-30g (g) (1) (C).

We conclude that the trial court properly sustained the plaintiff's consolidated appeal and reversed the zoning commission's denial of the plaintiff's modified application. We further conclude that the conditions imposed by the trial court were reasonable changes within the meaning of § 8-30g (g) (1) (C).

The judgment is affirmed.

In this opinion the other justices concurred.