# AVALONBAY COMMUNITIES, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF WILTON
## (AC 27239)

Schaller, DiPentima and Gruendel, Js.

Argued February 15—officially released September 18, 2007

*Maureen Danehy Cox*, with whom, on the brief, was *Jennifer Sills Yoxall*, for the appellant (defendant).

*Timothy S. Hollister*, with whom was *Gian-Matthew Ranelli*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, the planning and zoning commission of the town of Wilton (commission), appeals from the judgment of the trial court rendered in favor of the plaintiff, AvalonBay Communities, Inc. The principal issue in this appeal is whether the court properly concluded, pursuant to General Statutes § 8-30g (g),[1] that the reasons supporting the commission's

---

[1] General Statutes § 8-30g (g) provides in relevant part: "[T]he burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission,

denial of the plaintiff's applications for a zone change and site plan approval relating to the proposed development of a luxury apartment complex that included units of affordable housing were not supported by sufficient evidence in the record. Specifically, the commission claims that the court improperly (1) determined that the reasons supporting its denial were not supported by sufficient evidence in the record and (2) created a new legal standard under § 8-30g (g) for commissions challenging affordable housing applications. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff sought to construct a 100 unit luxury apartment complex, with 30 percent of the units reserved as affordable housing rental units, on a 10.6 acre parcel on Route 7 in Wilton. In February, 2003, the plaintiff submitted three applications to the commission in connection with the proposed development. Specifically, the plaintiff applied for an amendment to the zoning regulations to include a housing opportunity development district (HOD) with the purpose of increasing the availability of affordable housing in Wilton, a zone change to reclassify the proposed development site as an HOD zone and approval of a site development plan. The commission approved the zoning amendment with modifications and denied the zone change and site plan approval applications, both initially and after the applications had been revised.[2] Thereafter, the plaintiff appealed from the decision of

that (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development . . . ."

[2] General Statutes § 8-30g (h) allows the resubmission of an affordable housing application with modifications following an initial denial by a commission.

the commission to the Superior Court pursuant to § 8-30g (g). The court dismissed the plaintiff's appeal with regard to the proposed amendment to the zoning regulations, concluding that the plaintiff was not aggrieved by the commission's decision to approve the amendment with modifications and, therefore, lacked standing to appeal from the decision.[3] With respect to the zone change and site plan approval applications, the court sustained the plaintiff's appeal, concluding, in part, that the commission's reasons for denying the applications were not supported by sufficient evidence in the record. The court remanded the case to the commission with direction to approve the zone change and site plan applications. This appeal followed upon the granting of certification by this court.[4]

As a threshold matter, we set forth the standard of review and legal principles that guide our resolution of the commission's appeal. As our Supreme Court has stated, "a fundamental purpose of the affordable housing statute was to eliminate . . . deference to commission judgments." *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 716, 780 A.2d 1 (2001). To accomplish this goal, the legislature "recommended a new review procedure in which the reasons given by a commission . . . for its adverse decision will have to be persuasively supported in the record . . . ." (Internal quotation marks omitted.) Id.

"[I]n conducting its review in an affordable housing appeal, the trial court must first determine whether the

---

[3] The plaintiff has not appealed from the court's decision upholding the commission's approval of the proposed amendment to the zoning regulations with modifications.

[4] Affordable housing appeals to this court are subject to the certification requirement of General Statutes § 8-8 (o). *Ensign-Bickford Realty Corp.* v. *Zoning Commission*, 245 Conn. 257, 268–69, 715 A.2d 701 (1998). Section 8-8 (o), in relevant part, provides that in zoning matters "[t]here shall be no right to further review except to the Appellate Court by certification for review . . . ."

decision from which such an appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. General Statutes § 8-30g (g). Specifically, the court must determine whether the record establishes that there is more than a mere theoretical possibility, but not necessarily a likelihood, of a specific harm to the public interest if the application is granted. If the court finds that such sufficient evidence exists, then it must conduct a plenary review of the record and determine independently whether the commission's decision was necessary to protect substantial interests in health, safety or other matters that the commission legally may consider, whether the risk of such harm to such public interests clearly outweighs the need for affordable housing, and whether the public interest can be protected by reasonable changes to the affordable housing development. . . . Because the plaintiff['s] appeal to the trial court is based solely on the record, the scope of the trial court's review of the [commission's] decision and the scope of our review of that decision are the same." (Citation omitted; internal quotation marks omitted.) *Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 596–97, 872 A.2d 385 (2005).

In applying § 8-30g (g), we are mindful that the commission "remains the finder of fact and any facts found are subject to the 'sufficient evidence' standard of judicial review." *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 24, 856 A.2d 973 (2004). The sufficient evidence standard under the first prong of § 8-30g (g) requires the commission "to show a reasonable basis in the record for concluding that its decision was necessary to protect substantial public interests. The record, therefore, must contain evidence concerning the potential harm that would result if [the application were granted] and concerning the probability that such harm in fact would occur." (Internal quotation marks

omitted.) Id., 26, quoting *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 156, 653 A.2d 798 (1995).

## I

We first consider the commission's claim that the court improperly determined that the reasons supporting its denial were not supported by sufficient evidence in the record. Specifically, the commission challenges the decision of the court with respect to three reasons for the denial of the plaintiff's applications: (1) inadequate traffic gaps on Route 7;[5] (2) inadequate recreational space; and (3) safety concerns associated with the Wilton Acres Road bus stop. We address each of the commission's arguments in turn.

## A

We first examine the commission's contention that the record contains sufficient evidence to sustain its determination that there are inadequate gaps in traffic to allow drivers to exit from the proposed development safely. In support of its denial of the plaintiff's applications, the commission stated that "[t]he [plaintiff's] traffic engineer was unable to document his gap analysis and address concerns noted by the Commission's traffic engineering consultant or adequately address observations noted by area residents, the Commission and the Commission's staff." The commission concluded that "[b]ased on evidence from the Commission's traffic consultant, there appear[s] to be inadequate time gaps for turning movements from the proposed site onto Route 7, raising a serious safety issue for the residents as well as persons traveling along Route 7." The court found that the commission's concerns regarding the inadequate number of gaps in traffic were not supported by sufficient evidence because the commission merely

---

[5] The plaintiff's traffic engineer testified before the commission that a gap in traffic is measured as "the amount of time from the back of one bumper to the front of the next following bumper, for both ways of traffic."

criticized the conclusions of the plaintiff's expert as incomplete without presenting specific evidence to undermine those conclusions.

We conclude that the court properly determined that the record does not contain sufficient evidence to support the commission's denial of the plaintiff's applications on the basis of inadequate gaps in traffic. Although the evidence in the record reveals a high volume of traffic on Route 7, the record does not establish that the existing number of traffic gaps on Route 7 is insufficient, nor does it demonstrate that the risk to drivers would be increased as a result of the proposed development. The plaintiff submitted a traffic study to the commission conducted by its traffic engineers and transportation planners that counted the number of traffic gaps available during peak hours. The study concluded that, despite an increase in traffic volume, the number of available traffic gaps remained sufficient to allow drivers to exit the proposed development safely. The study further concluded that the proposed development would not exacerbate the current traffic conditions.

In a peer review of the plaintiff's development proposal, John P. Thompson, a professional engineer employed by the commission, questioned the methodology of the traffic study. Thompson further noted that the study provided insufficient documentation to support its conclusion as to the adequacy of the available traffic gaps and failed to consider a likely future reduction in gaps as a result of increases in traffic volume. Thompson concluded that the number of gaps would "most likely be reduced" as traffic volumes continued to increase, creating the "potential . . . [for] a higher level of driver frustration and 'risk-taking' . . . which could result in an unacceptably high incidence for accidents." The town planner, Robert Nerney, and commission members similarly questioned the conclusions

drawn in the traffic study. Notably, however, the record is devoid of specific evidence undermining the conclusion of the plaintiff's experts that the number of suitable traffic gaps would not be adversely affected by increases in traffic volume. See *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 157 ("commission had the burden of showing evidence in the record to *support* its decision not to believe the experts—i.e., evidence which undermined either the experts' credibility or their ultimate conclusions [emphasis in original]"). Furthermore, the conclusions reached by Thompson in his peer review of the plaintiff's proposal, on which the commission relied, were entirely speculative. Although Thompson cited a "probable reduction" in the number of available gaps as a result of increases in traffic volume, he did not provide any support for that assertion. Additionally, Thompson correlated a hypothetical reduction in the number of available gaps to a higher incidence of accidents without presenting an opinion as to the probability that such accidents would occur if the proposed development were constructed. We conclude, therefore, that the record establishes no more than a mere possibility of harm resulting from insufficient gaps in traffic.[6]

## B

We next consider the commission's contention that the record contains sufficient evidence to sustain its

---

[6] With respect to traffic concerns, the court did find that there was sufficient evidence in the record to support the commission's conclusion that the site driveway would operate at a failing level of service. The court explained that a failing level of service is assigned to an intersection or movement that is over capacity and where drivers may experience long delays. The court concluded, however, that the safety risk associated with a failing level of service did not outweigh the need for affordable housing. The commission has not challenged this determination by the court. Rather, the commission's argument on appeal, and the one that we have addressed, focuses on the decision of the trial court that the record did not contain sufficient evidence to support the commission's concerns relating to inadequate gaps in traffic.

determination that children likely would play on unsafe roadways and steep slopes as a result of the inaccessibility of a majority of the designated recreational areas and the lack of alternative recreational facilities. In denying the plaintiff's applications, the commission stated that nearly two-thirds of the recreation area would be unusable and that the proposed development would not safely comply with HOD zoning requirements governing recreation areas. The commission concluded that "[t]he lack of meaningful recreation space may result in children playing on developed or cleared land such as roadways or on steep slopes, both of which are unsafe . . . ." The court rejected the commission's argument in part on the ground that "the record contains no evidence beyond the conjecture of the commissioners that children will be forced to play in roadways or on steep slopes." The court further stated that "[t]he evidence in the record simply does not support a finding that the site cannot safely be used for an HOD [district] because of recreational needs."

We conclude that the record does not contain sufficient evidence to support the commission's denial of the plaintiff's applications on the ground that children would be exposed to dangerous conditions as a result of inadequate recreational space. On the basis of reviews submitted by Nerney and the commission's planning expert, David J. Portman, the record contains evidence to suggest that portions of the designated recreational space would be inaccessible. On the basis of that fact, however, the commission offers speculation that children necessarily would play in unsafe areas. We note from the record that the development plans include designated recreational spaces, such as a swimming pool, a playscape and a clubhouse, all of which are permitted by the HOD regulations as stated in the amendment to the zoning regulations approved by the commission. Additionally, there is no evidence in the

record to support the commission's assertion that recreational spaces and facilities in the surrounding area would be inadequate. The record, therefore, is devoid of any specific findings of fact to support the commission's assertion that the inaccessibility of much of the recreation space would leave children with no alternative but to play in unsafe areas.

C

We next consider the commission's contention that there is sufficient evidence in the record to support its denial of the plaintiff's applications on the basis of safety concerns associated with the Wilton Acres Road bus stop. Specifically, the commission argues that there is sufficient evidence in the record to support its contention that, as a result of the safety concerns associated with the Wilton Acres Road bus stop, parents would likely drive their children to the bus stop, thereby causing dangerous traffic congestion on Wilton Acres Road. The court concluded that there was insufficient evidence in the record to support the commission's assertion. We agree. The commission's conclusion that, as a result of various safety concerns, parents would be likely to drive their children to the bus stop, thereby creating the potential for accidents due to traffic congestion is entirely speculative and, therefore, does not amount to sufficient evidence to support the commission's denial of the plaintiff's applications.[7]

---

[7] In support of its conclusion that parents would be likely to drive their children to the Wilton Acres Road bus stop, the commission asserts that its concerns as to the overall safety of the bus stop, namely, unsafe stopping distances, insufficient lighting, the lack of shelter and the lack of a defined waiting area, are supported by sufficient evidence in the record. The commission, however, did not provide any analysis in its brief as to insufficient lighting, lack of shelter and lack of a defined waiting area. We therefore decline to reach these issues.

As a reviewing court, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *BRJM, LLC* v. *Output Systems, Inc.*, 100 Conn. App. 143,

In sum, we conclude that the court properly determined that there was insufficient evidence in the record to support the commission's denial of the plaintiff's applications on the basis of inadequate traffic gaps on Route 7, inadequate recreational space and safety concerns associated with the Wilton Acres Road bus stop.

## II

We next consider the commission's claim that the court created a new legal standard under § 8-30g (g) for commissions challenging affordable housing applications. In support of its claim, the commission contends that, when the conclusions of its members and experts drawn from reasonable assumptions as to human behavior as well as its experts' peer reviews of the plaintiff's development proposal are considered, sufficient evidence exists in the record to support its denial on the basis of the previously stated reasons. The crux of the commission's argument is that, in failing to credit such information, the court implicitly and improperly created a new legal standard that is higher than the sufficient evidence standard because it will require commissions to hire experts to prove probable human behavior, thereby making it cost prohibitive for local commissions to challenge affordable housing applications. We disagree.

We begin by noting the applicable standard of review. Because the commission's claim requires us to determine whether the court applied the correct legal standard in deciding whether the reasons supporting the

151–52 n.7, 917 A.2d 605, cert. denied, 282 Conn. 917, 925 A.2d 1099 (2007). We further decline to consider the commission's concerns regarding stopping distances, lack of shelter and lack of a defined waiting area because such concerns were not a basis of the trial court's decision with regard to the Wilton Acres Road bus stop. It is well established that appellate courts "will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." See *Keating* v. *Glass Container Corp.*, 197 Conn. 428, 431, 497 A.2d 763 (1985).

commission's denial were supported by sufficient evidence in the record, our review is plenary. See *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002).

In its memorandum of decision, the court applied the standard of review articulated in *Carr* v. *Planning & Zoning Commission*, supra, 273 Conn. 596–97, stating: "[T]he trial court must first determine whether the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. General Statutes § 8-30g (g). Specifically, the court must determine whether the record establishes that there is more than a mere theoretical possibility, but not necessarily a likelihood, of a specific harm to the public interest if the application is granted." The court further explained that "[t]he test for determining whether such a decision is supported by sufficient evidence requires only that such evidence be included in the record upon which the commission's decision is based. . . . The court must review the evidence in the record to determine whether the [commission's] conclusions, which are clearly set forth in the record, are supported by sufficient evidence." (Citations omitted.)

The commission maintains that the court applied a new legal standard in disregarding its conclusions as to safety risks reached on the basis of reasonably assumed human behavior. The commission's argument, however, is flawed. In relying on assumptions as to how individuals will behave under a particular set of circumstances, the commission rested on speculation to support its safety concerns. As properly stated by the court, the sufficient evidence standard of § 8-30g (g) requires that the record establish more than a mere theoretical possibility of harm to support the denial of an affordable housing application. See *River Bend Associates, Inc.* v. *Zoning Commission*, supra, 271 Conn. 26. The record must contain evidence as to a quantifiable probability

that a specific harm will result if the application is granted. See *Kaufman* v. *Zoning Commission,* supra, 232 Conn. 156; see also R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 51:6, p. 182.

In the present case, the conclusions of the commission's members and experts regarding safety risks drawn from speculation as to likely human behavior fall short of establishing a quantifiable probability of specific harm. Similarly, the peer reviews of the commission's experts discussed safety concerns in connection with the proposed development but did not identify the probability that specific harms would ensue. Mere concerns alone do not amount to sufficient evidence to support the denial of an affordable housing application pursuant to § 8-30g (g). The commission, therefore, failed to meet the sufficient evidence standard of § 8-30g (g). Specifically, the commission did not present evidence as to the extent of harm posed by its stated safety concerns or the probability of such harm if the plaintiff's applications were granted. See *River Bend Associates, Inc.* v. *Zoning Commission,* supra, 271 Conn. 24; *Kaufman* v. *Zoning Commission,* supra, 232 Conn. 156. For those reasons, we conclude that the trial court properly applied § 8-30g (g) in determining that the reasons supporting the commission's denial were not supported by sufficient evidence in the record.

In sum, we agree with the conclusion of the court that the record does not contain sufficient evidence to support the commission's denial on the basis of the reasons discussed in this opinion.[8] The proper remedy,

[8] We note that even if we were to conclude that the record contained sufficient evidence to support the commission's denial of the plaintiff's applications, we would be unable to grant the commission the relief it seeks, namely, reversal of the judgment of the trial court and the upholding of the commission's denial of the plaintiff's zone change and site plan applications, because the commission did not provide this court with any analysis demonstrating that its decision "was necessary to protect substantial interests in health, safety or other matters that the commission legally may consider,

as noted by the court, is to remand the case to the commission with direction to approve the zone change and site plan applications.

The judgment is affirmed.

In this opinion the other judges concurred.

whether the risk of such harm to such public interests clearly outweighs the need for affordable housing, and whether the public interest can be protected by reasonable changes to the affordable housing development." (Internal quotation marks omitted.) *Carr* v. *Planning & Zoning Commission*, supra, 273 Conn. 596–97.

The commission summarily asserts that its stated risks of harm to the public interest outweigh the need for affordable housing and failed entirely to brief the remaining prongs of General Statutes § 8-30g (g). As we have stated, "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *BRJM, LLC* v. *Output Systems, Inc.*, 100 Conn. App. 143, 152 n.7, 917 A.2d 605, cert. denied, 282 Conn. 917, 925 A.2d 1099 (2007).